NELLIE F. MAHER, ADMINISTRATRIX (ESTATE OF LINCOLN A. MAHER) *vs.* GEORGE C. FAHY ET AL.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued June 11th—decided July 31st, 1930.

*Walter J. Walsh,* with whom was *John J. Sullivan, Jr.,* for the appellant (plaintiff).

*William B. Gumbart* and *Charles A. Watrous,* for the appellees (defendants Fahy).

*David E. FitzGerald, Jr.,* with whom, on the brief, were *David E. FitzGerald* and *Frank E. Bollman,* for the appellee (defendant Emma Verwholt).

HAINES, J. Shortly after twelve o'clock the night of December 28th, 1928, an open Packard car driven by the defendant George C. Fahy, Jr., was in collision with a closed Graham-Paige car driven by defendant Raymond E. Verwholt, on Prospect Street in New Haven, and the plaintiff's decedent, Lincoln A. Maher, who was riding in the Fahy car, was thrown from the car and so badly hurt that he died soon after. This action was brought by the administratrix of his estate against the drivers of both cars as well as the owners of the cars, the defendants George C. Fahy, Sr., and Emma Verwholt. A jury gave the plaintiff a verdict against all the defendants for $10,000. Upon motion to set aside this verdict the court held that the jury could not reasonably have found from the evidence that Fahy, Jr., was guilty of conduct which constituted heedless and reckless disregard of the rights of others, and the verdict against the Fahys—father and son—was set aside. The court also held that the jury could not reasonably have found that the defendant Raymond E. Verwholt was the agent of his mother Emma Verwholt and therefore set aside the verdict as to her. This action of the trial court is the basis of the plaintiff's appeal, and the defendants Fahy have filed a bill of exceptions, to certain portions of the charge, to the refusal of the court to submit an interrogatory and to certain rulings on evidence. We first consider the ac-

tion of the court setting aside the verdict as to the defendants Fahy.

Fahy, senior, owned the Packard car and his son Fahy, junior, was in possession of and driving it at the time of the injury to the plaintiff's decedent. The latter, Lincoln A. Maher, was riding in the Fahy car as a guest within the meaning of our statute: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." General Statutes, § 1628.

The evidence was voluminous, and much of it contradictory, and all of it could not have been true. The situation was further complicated by the fact that the claims against all defendants were prosecuted in a single action so that some of the evidence admissible against one was not admissible against another. We have read and considered the entire evidence with great care and with particular reference to the conclusion of the trial court that the conduct of Fahy, junior, was not such as to create liability to the plaintiff under the statute referred to. Intentional misconduct cannot be seriously claimed and the single question is whether his conduct was something more than the lack of that due care of a reasonably prudent person, which is negligence. We have construed this statute to mean conduct which was in heedless and reckless disregard of the rights of others. *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 Atl. 136. We do not share the doubt expressed by the trial court, as to whether he was guilty of negligence, but it was incumbent upon the

plaintiff to prove more than that, for "heedless and reckless disregard of the rights of others" constitutes, in substance, wanton misconduct, consisting of a reckless disregard of the just rights or safety of others in their lives, limbs, health, reputation or property, or of the consequences of one's action. *Grant* v. *MacLelland,* 109 Conn. 517, 520, 147 Atl. 138; *Bordonaro* v. *Senk,* 109 Conn. 428, 147 Atl. 136; *Silver* v. *Silver,* 108 Conn. 371, 143 Atl. 240. The plaintiff claimed the Fahy car was traveling in the middle of Prospect Street which was thirty-three feet wide. The width of the Fahy car was five feet, and taking the most favorable aspect of the plaintiff's evidence, it was therefore occupying two and one half feet of the left side of the street. This left fourteen feet for the Verwholt car to pass, nearly three times its width. The street in front of Fahy was clear of vehicles, and smooth, and the speed in itself cannot be held to have been negligent. Even if Fahy heard the horn, which he denies, and even if he failed to comply with the statute in not turning further to his right, these things combined, could not be held as more than negligent conduct. The jury found specifically that he was not racing with the Verwholt car. On the most favorable construction of the plaintiff's evidence, we concur in the view of the trial court that the conduct of Fahy was not that heedless and reckless disregard of the rights of the decedent which the statute requires. Our conclusion upon this phase of the case, without further detailed reference to the evidence is, that the court was not in error in setting aside the verdict as to the Fahys, father and son.

The jury's verdict also ran against Raymond Verwholt and his mother, Emma Verwholt. The court set the verdict aside as to the latter, but allowed it to stand as against Raymond Verwholt, who has not appealed. The question thus presented is whether the

Verwholt car was a "family car" maintained by Emma
Verwholt for the use, pleasure or convenience of the
family including the son Raymond Verwholt. We have
stated the rule in this State as follows: "When an
automobile is maintained by the owner thereof for
the general use and convenience of his or her family,
such owner is liable for the negligence of a member of
the family, having general authority to drive the car,
while it is being used as such family car, that is, for
the pleasure or convenience of the family or a member
of it." *O'Keefe* v. *Fitzgerald*, 106 Conn. 294, 298, 137
Atl. 858. In that case, the car was driven by a sister
of the owner. She was employed by him in his store,
made her home with him, and had no car of her own.
He and she were the only ones in his family who had a
license to drive a car. She had asked her brother for
the use of the car to go to a wedding with some guests
of her own. She had driven the car an average of once
a week for her own purposes, as on this occasion, and
while the owner never restricted her in the use of it,
she always got special permission from him to do so.
We held that she was a member of the owner's family,
but as to whether she had general authority as such, to
use the car, we said: "It appears that she did not ven-
ture to take the car without permission; in fact she ap-
proached the owner twice upon the matter. If she
had had general authority to use it, and he was main-
taining it for her use as well as for his own and that of
the other members of his family, the seeking of permis-
sion to drive the car on this occasion would manifestly
have been unnecessary. She not only sought permis-
sion, but she explained her purpose, and when, where,
and how she wanted to use it. The record is bare of
any instance where she had used the car without thus
seeking permission. There appears no instance when
she used it on a general authorization to do so. She

always obtained 'special permission' . . . She was purely a gratuitous bailee." The facts in the present case bear a close analogy to those in the *O'Keefe* case. The driver was a son, a member of the owner's family, and he had no car of his own. The mother and the son were the only members of the family who were licensed to drive a car. He had possession and use of the car on this occasion for a purpose strictly his own. He had obtained it by asking special permission from the owner. He had used the car less frequently than the driver in the *O'Keefe* case, and unlike that case his use of it was restricted, and sometimes refused. These and other facts established by the evidence, satisfy us that the son did not have general authority to drive this car and that it was not a "family car" within the meaning of our law. The legal distinctions between liability for "negligence" and liability under our "guest statute," as well as those between general liability for an agent and that created by our "family car" doctrine are, sometimes, not easily comprehended by a jury, and this makes it important that they be clearly and carefully instructed by the court. Even more difficulty often arises in the application of these principles to the facts of the case on trial, and it is not surprising that a jury should, as we think they did in this case, fail to clearly recognize and apply these distinctions to the facts before them. We also sustain the action of the trial court in setting aside the verdict as to Emma Verwholt. This renders it unnecessary to consider the bill of exceptions.

There is no error.

In this opinion the other judges concurred.