65 P.(2d) 869

**STATE v. TURNEY.**

No. 4249.

Supreme Court of New Mexico.

Feb. 23, 1937.

J. Benson Newell, of Las Cruces, for appellant.

Frank H. Patton, Atty. Gen., and Edward P. Chase, Asst. Atty. Gen., for the State.

ZINN, Justice.

The defendant (appellant here), Robert Turney, was charged by information in the district court of Otero county, N. M., with the crime of involuntary manslaughter. The information contained two counts. The first count charging the killing of one Alejandro Montoya, who was traveling in a Chevrolet "pick-up" truck, which Turney struck while operating a Ford sedan. The first count charged Turney with operating his car in a wanton disregard of the rights and safety of others, and without due caution and circumspection. The second count charged Turney with driving the Ford while under the influence of intoxicating liquor. Turney was convicted under the first count, acquitted on the second, and was sentenced to from eighteen months to two years, from which sentence he appeals.

The facts material to an understanding of the charge upon which the defendant was convicted, as adduced by the evidence in this case, are briefly as follows:

The defendant, Robert Turney, in company with two friends, left Las Cruces on the afternoon of July 3, 1935, with the purpose of going to Ruidoso, N. M., to spend the 4th of July. They went by way of El Paso, Tex., and there picked up another friend who accompanied them. They left El Paso about 6 o'clock in the evening. In El Paso they got some ice in a metal kettle and put some whisky on the ice. En route, the defendant had a couple of drinks. He was driving the car during the entire trip. They arrived in Alamogordo between 7 and 8 o'clock. They then drove to the home of a young lady who joined the party. They left Alamogordo going to Ruidoso, with three of the boys sitting in the front seat and the other boy and the young lady sitting in the back seat. The highway from Alamogordo north was black-topped and perfectly straight, but slightly upgrade from the city limits north towards Tularosa. At a point approximately four miles out of Alamogordo, and at a point about 200 yards south of the branch road leading from the main highway, at right angles to the settlement of La Luz, and while traveling at rates of speed variously estimated by different witnesses at from forty to fifty miles per hour, the Ford sedan struck the Chevrolet in which the deceased was riding. The defendant claims that a large truck, bearing neither a tail light nor reflector, suddenly appeared in front of his car, and in an attempt to pass said truck, he turned to the left to go around it, when, for the first time, according to his testimony, he observed the car in which deceased was riding approaching from a northerly direction, with the headlights very dim. The defendant claims he was unable to clear both the truck and car, and his car struck the left front wheel of the Chevrolet, which

merely pushed it partially off of the road, and left it setting with the two wheels on the shoulder or graded portion of the road, and the rear of the car being off the graded portion, and coming to rest at right angles with the said highway. The Chevrolet was not upset, but several of the occupants either fell or were knocked from the car as a result of the collision, and three of them died of injuries sustained in the accident.

Sheriff Howard Beacham and his deputy testified that they came upon the scene of accident while looking for a stolen car. They found the left side of each of the cars smashed where they had collided with each other, a large gouge in the pavement extending from the front of the Chevrolet where they found it to a point fifty-two feet north, which would indicate that the Ford sedan after the crash had proceeded that length before coming to a halt. This gouge was at a point six feet from the left shoulder facing north on a twenty foot black-top road, which would indicate that the Ford sedan was clear over on the left side of the highway. The gouge was caused by the left front hub of the broken wheel of the Ford sedan. The defendant, according to Sheriff Beacham, immediately after the accident told Beacham that he was not driving fast, at a speed of between forty and fifty, and that "I was going up the broad middle of the road when this crash occurred."

None of the survivors riding in the Chevrolet truck were able to give any coherent story of the accident, due probably to the fact that most of them were knocked unconscious and therefore could not relate just what happened at about the time of the collision.

The first error assigned by the defendant is predicated upon the court's refusal to give defendant's requested instructions to the jury. These requested instructions embodied the defendant's theory that the killing occurred as the result of an unavoidable accident. We have carefully read the requested instructions, and the instructions given by the court. We find that the instructions given by the court present and clearly cover the defendant's theory of unavoidable accident. The rule in this jurisdiction is that if the instructions given by the court properly present the law of the case to the jury, it is not error to refuse requested instructions covering the same ground. State v. Bailey, 27 N.M. 145, at page 155, 198 P. 529, and cases therein cited.

The second error is assigned on the court's refusal to direct an instructed verdict in favor of the defendant at the close of the State's case. Error, if any, in denying the defendant's motion for directed verdict was waived when the defendant elected to put in his defense and introduced evidence. State v. Stewart, 34 N.M. 65, 277 P. 22; State v. Analla et al., 34 N.M. 22, 276 P. 291; State v. White, 37 N.M. 121, 19 P.(2d) 192.

The third assignment of error is based on the defendant's claim that the trial court did not compel the State to elect

upon which count the case should proceed after the close of the State's case in chief. The defendant was acquitted on the second count and found guilty upon the first count of the information. This matter has been disposed of by us in the recent case of State v. Jones, 39 N.M. 395, 48 P.(2d) 403, 406. We there said: "Appellants claim error in the refusal of the trial court to compel the state to elect on which of the two counts in the indictment the state would stand. Ordinarily, we might consider whether the trial court had abused its discretion in not compelling an election. Here, however, the appellants were convicted under one count only, namely, the second count. Where defendants are convicted only on one count, though the indictment, in two counts, charges separate offenses, defendants cannot be heard to complain of error which did not operate to their prejudice, having been convicted upon one count only. We cannot see wherein the defendants were prejudiced when they were convicted upon the second count and acquitted on the first count. It cannot be seen how they were hurt by the jury doing the very thing they desired the state to do. 17 C.J. 286, § 3624."

As to the practice question, which counsel for the defendant claims is confusing, we merely desire to point out that section 35-4443, N. M. Trial Court Rules, under section 2 thereof, authorizes the court to direct a severance where there is either a misjoinder of the offenses charged or there exists any uncertainty in the charge as stated, which does not happen to be true in the instant case. If sections 35-4443 and 35-4409 of the N. M. Trial Court Rules are read together, there should be no confusion in the minds of either the prosecuting attorney or attorney for the defendant.

The fourth assignment of error is predicated upon the court's denial of the motion of the defendant at the close of the entire case for an instructed verdict. The defendant claims that the State wholly failed to prove either by circumstantial or direct testimony the material allegations contained in each of the counts of said information.

The defendant was acquitted of the charge contained in the second count. We are not concerned with the evidence offered by the State to substantiate this charge. As to the first count, to wit: "That Robert Turney * * * on the 3rd day of July, A. D. 1935, unlawfully and wilfully did drive and operate a motor vehicle, to-wit: A Ford sedan, in and upon the public highways of Otero County, New Mexico, in a careless, heedless and wanton disregard of the rights or safety of others, and without due caution, and circumspection and in a manner so as to endanger persons and property, and at the time and place aforesaid, while driving and operating said motor vehicle, as aforesaid, unlawfully, feloniously and unintentionally, and while engaged in the commission of the act aforesaid, the same being an unlawful act, not amounting to a felony, did drive and operate said motor vehicle, which he was engaged in driving and operating, as aforesaid, into a motor vehicle in which one

Alejandro Montoya was, then and there, riding, and by thus striking the said motor vehicle so occupied by the said Alejandro Montoya, did, then and there, cause the same to turn over and leave the highway, aforesaid, and by the collision and the overturning of said motor vehicle in which the said Alejandro Montoya was riding, as aforesaid, did inflict in and upon the body of him, the said Alejandro Montoya, divers mortal wounds, of which mortal wounds, he, the said Alejandro Montoya, did, then and there, die," we are forced to rule against the defendant. We have carefully examined a voluminous record. The jury had the right to believe that the defendant was not only driving down the middle of the road, but over on the left side of the road at the time of the collision. The jury had a right to believe from the evidence that the collision was not purely accidental. The jury had a right to believe that the defendant was not only driving down the broad middle of the road, but over on the left side of the road, and that this was not done to avoid a collision with any other vehicle on the road, but that the defendant was driving his Ford sedan in a careless and negligent manner and in wanton disregard of the rights or safety of others and in violation of Comp.St.1929 § 11-803. The jury had a right to disbelieve the defendant's story respecting his attempt to avoid a collision with the truck of one Cadwallader. The evidence which the jury had a right to believe supports the verdict. We cannot disturb the same on appeal.

As to the fifth and last assignment of error, we must likewise rule against the defendant. The court refused to permit witness Cadwallader to testify as to his "impressions" at the time of the accident. An exception was taken to this ruling, but the defendant made no tender of what he expected to prove by the proffered testimony. In the absence of such tender, we cannot ascertain whether the court did or did not err in his ruling. Had a tender been made of what Cadwallader's "impressions" were at the time of the accident, the same might have been admitted. Without such tender no error can be predicated.

Finding no error in the record, the verdict and judgment of the district court must stand. It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.