Exie Wolf, Respondent, v. Ernest Holton, Appellant.—224 S. W. 2d 861.

Kansas City Court of Appeals.   Opinion delivered October 3, 1949.

1124

*Alexander, Ausmus & Harris* and *Warren D. Welliver* for appellant.

*Boyle G. Clark, William H. Becker, Robert C. Smith, Jr.,* and *Clark, Boggs, Peterson & Becker* for respondent.

VANDEVENTER, J. (Sitting by order of the Supreme Court.)— Plaintiff (respondent here) sued defendant (appellant) for damages alleged to have been caused in an automobile accident which occurred in the State of New Mexico. Plaintiff obtained judgment for $5,000.00 and defendant appealed. An adjudication of the case involves the construction of the guest statute of New Mexico, as it is conceded by both appellant and respondent that the law of that state is applicable to this case.

Section 68-1001 of Chapter 10, Art. 68 of the New Mexico R. S. 1941 is as follows:

"68-1001. *Guests in Motor Vehicles—Right of action for damages for injury, death or loss.*—No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said operator or owner or caused by his heedlessness or his reckless disregard of the rights of others (Laws, 1935, Ch. 15, Sec. 1, p. 26.)"

The trial court, after hearing the evidence, ruled that the plaintiff was a guest, although she alleged in her petition that she was to pay her proportionate share of the expense of operating the automobile on a trip from Columbia, Missouri to California and that she was not a guest. Respondent, although she did not appeal from the trial court's ruling, urges that this court should find that she was not a guest but was a fare-paying passenger. On this subject, her evidence

shows that she remarked to the wife of the defendant, who, by the way, was her sister, that she did not wish to "sponge" off of them (her sister and defendant) on this trip and suggested that she would like to pay for part of the gas and oil used. At one time on the way she offered defendant's wife $10.00 to apply on expenses and it was refused. The defendant heard no such proposition and plaintiff's sister denied such conversation occurred, and it was conceded that no fare was actually paid and that no contribution was made to purchase gas and oil. The trial court was correct in its ruling that plaintiff was a guest. Morse v. Walker 229 N. C. 778, 51 S. E. (2) 496. Brody v. Harris, 308 Mich. 234, 13 N. W. (2) 273, 155 A. L. R. 573. McCann v. Hoffman 9 Cal. (2) 279, 70 Pac. (2) 909, 155 A. L. R. 575, Anno.

The next question is on the sufficiency of the evidence. Was there sufficient proof that the injuries alleged to have been sustained by the plaintiff were caused by defendant's "heedlessness or his reckless disregard of the rights of others?" Appellant contends that if any negligence were shown, it was only ordinary negligence and that his motion for a directed verdict should have been sustained.

In passing upon this question, we must consider only that evidence most favorable to the plaintiff, drawing every reasonable inference therefrom in her favor, that we should consider only such of the defendant's evidence as tends to prove the plaintiff's case and disregard all evidence in favor of the defendant. Sollenberger v. Kansas City Pub. Serv. Co. 202 S. W. (2) 25, 356 Mo. 454. Smith v. Siedhoff 209 S. W. (2) 233.

The evidence showed that in October, 1945, defendant and his wife planned to make a trip to California. It was part business (in which plaintiff had no interest) and part pleasure on their part. The plaintiff wanted to go and her sister wanted her to go because she (plaintiff) enjoyed trips and her sons were in California. Her object was to visit her children, three of whom lived in California. Before starting on the trip, defendant applied to the ration board for two new tires but his application was rejected. They first started pulling a trailer but some fifty miles west of Columbia, Missouri, they had tire trouble on the trailer and returned to Columbia. Defendant then endeavored to obtain railroad transportation and after encountering some difficulty, he decided to make the trip by automobile. The three of them left Columbia about the 28th of October. They stayed the first night at Baxter Springs, Kansas, the second night at Erick, Oklahoma, and the accident in question happened on U. S. Highway 66 a few miles west of Tucumcari, New Mexico. The accident happened about 4 o'clock p. m. on a clear day on a straight piece of paved, dry highway, with a solid sand or dirt shoulder, when the defendant, who was driving the car, was proceeding, as he

thought, at 45 miles per hour and he testified there was a possibility, but hardly probable, "that the speed could have been 50 or 55 miles per hour." The left rear tire blew out, the car ran down the pavement several feet; then onto the dirt shoulder of the road, proceeding smoothly 100 or 125 feet along the slab and hard packed shoulder and was then brought by defendant back onto the paved portion of the highway and his speed was reduced, so he thought, to 20 or 25 miles an hour. He (as a witness for plaintiff by deposition) testified "I felt like it had almost stopped." After getting the car back on the pavement, he applied the brakes, which were in good condition, and, for some unexplained reason, the car turned over and when it came to a standstill on the pavement, it was facing in the opposite direction. It was this accident in which plaintiff was injured.

This accident happened during the time tires were rationed and the defendant admitted that before starting the first time, when they turned back and possibly again before starting the last time, he applied to his local rationing board for two new tires but that his application was refused. He stated:

"A. Well, I would have been better satisfied with new tires. I have always made it my business to have good tires when I started on a trip like that even if I did have fair tires,—if I I could get good ones that I knew I could depend on, I would get them."

He inspected his tires on an average of four times a day during the trip.

The plaintiff testified that just prior to the accident, when the car came into the straight stretch of road on which it later overturned, that defendant asked his wife if she wanted him to "open it up" and she said "No, you don't want to, because the tires aren't very good." Plaintiff thought the speed of the car increased some at that time but she wasn't certain; that several times during the trip Mrs. Holton called defendant's attention to the fact that he was traveling over 45 miles per hour but that plaintiff never did remonstrate. She did not know how fast the car was traveling at the time of the blow-out. She stated:

"A. We were going along at a pretty good gait and it all happened so quick I don't hardly know, but all at once this tire broke out and I thought we were going down quite a little back there, at first, but he seemed to get control of it and it began to idle down some and all at once, like that (snapping fingers) we were going over and headed back the way it had come from and it was sitting on its wheels when it came to a stop."

Before the enactment of the guest statute in New Mexico, a guest could recover for injuries sustained as a result of the ordinary negligence of the driver of an automobile. DeSoto Motor Corp. v. Vann (10th Cir. New Mex.) 66 Fed. (2) 753. Blashfields Cyclopedia of Automobile Law, Vol. 4 Page 344, Sec. 2311, et seq.

Evidently the legislature of New Mexico intended to change the then existing condition of the law, otherwise it would have been a useless, foolish thing to have enacted the so-called guest statute. Guest statutes are based on sound public policy. Gill v. Hayes, 108 Pac. (2) 117, 188 Okla. 134. No one can doubt the justness of a statute which permits a difference in the liability of a person, who out of generosity, gratuitously transports another as a guest, thereby rendering to his fellow travelers a friendly service, and one who is actuated only by the cash remuneration he receives. One who is charitably inclined should not be restrained by fear of the consequences of his charitable act and the person accomodated should not be permitted to gain by the generosity of his host. If guest statutes did not so distinguish, generous drivers would be inclined to wholly refuse to render gratuitous services to anyone. Furthermore the legislature evidently had in mind the frequent litigation arising where passengers, who were recipients of kindly and gratuitous transportation, receive some injury from the negligent operation of an automobile and for that reason, seek recovery of large sums of money from their host, who was in no way benefited by his good Samaritanism other than by the feeling of satisfaction that naturally follows the doing of a good deed. One of the evident purposes of guest statutes is to correct this abuse and to promote the best interests of the people in their relation to each other.

Another reason for the passage of such statutes is to prevent fraud and collusion between gratuitous guests in motor vehicles and the friendly owners and operators of the same in making unjust demands against casualty insurance companies for injuries sustained. Kitchens v. Duffield (Ohio) 79 N. E. (2) 906; Hennon v. Hardin (Ga. App.) 50 S. E. (2) 236; Romonsky v. Cestaro 145 A. 156, 109 Conn. 654 Silver v. Silver 108 Conn. 371, 143 A. 240, 65 A. L. R. 943; Stephins v. Murphy 183 A. 678, 110 Conn. 244; Nelson v. Armistead (Ill.) 63 N. E. (2) 648; Gallegher v. Davis, 37 Del. 380, 183 A. 620.

Many times plaintiff and defendant are close relatives and statutes have been passed forbidding such suits between persons related within the third degree of consanguinity or affinity. See Statutes of Arkansas, 1947 Anno. Section 75-915.

Other reasons could be thought of which would demonstrate the sound public policy of such acts, but it is certain in all states where guest statutes have been adopted, that it was the intention to require

a greater degree of culpability on the part of the owner or operator of the automobile than that of ordinary negligence or as the cases say, "failure to exercise that degree of care that an ordinarily prudent person would exercise under the same or similar circumstances." Davis v. Knight (Iowa) 35 N. W. (2) 23; Yarnall v. Cass et al. (Mo. App.) 217 S. W. (2) 283; Gill v. Hayes, supra. The many statutes contain different phraseology, but in all the decisions, it is clearly manifest that ordinary negligence is not sufficient to create liability under the guest statutes. Of course each case must be viewed from the standpoint of its own facts.

This particular statute, so far as counsel has cited and so far as our independent investigation has disclosed, has been construed only twice. Once in its home state of New Mexico and once in Oklahoma. Neither of these cases is directly in point with the facts of the case we have in hand.

In Stalcup v. Rusic 51 N. M. 377, 185 Pac. (2) 298, this statute was in question. The accident in that case occurred on the streets of Clovis, New Mexico, the street also being a part of U. S. Highway No. 60, which normally carried heavy traffic between the business section of the city and the Army Air base situated nearby. The place where the accident happened was both business and residential in makeup and the collision was caused by the left side of appellant's car colliding with the left front end of a city bus. It was after night and the drivers of the motor vehicles could have seen the lights of the other approaching for three blocks and did keep an eye on each other to the point of collision. They were fully aware of each other's presence. Appellant entered the city limits traveling east at a high rate of speed, ranging from 65 to 90 miles per hour in violation of city and statutory speed laws. At 200 feet away from the bus, the appellant applied his brakes momentarily, thinking the bus was getting into his lane of traffic, but he immediately released them, concluding the danger had been averted and continued at the same high and dangerous rate of speed. He again applied his brakes when he was closer to the bus and did it suddenly, because he thought the bus was again swerving into his traffic lane. Actually the bus had stopped, preliminary to executing a left hand turn. The appellant's car had skidded, as shown by skid marks on the pavement, from a point 97 feet west of the point of collision to a point 90 feet east thereof. The Supreme Court of New Mexico held under this state of facts that the jury was justified in finding that the appellant was operating his automobile in heedless and reckless disregard for the safety of the passengers. To this opinion, there was a vigorous dissent by district Judge Hensely, he contending, among other things, that only ordinary negligence was shown. The facts in that case are en-

tirely different from that of a man driving in broad daylight, on a dry and well paved highway, at a speed slightly above 45 miles per hour with very little, if any, traffic.

In Gill v. Hayes, supra, this same statute was construed. In that case the evidence showed that the defendant was driving a new car at a speed sometimes as high as 80 miles an hour, that several times the plaintiff requested the defendant to slow down and that he generally did so but would immediately resume his former speed. Just before the accident, it had been raining but at the time of the accident, the rain had stopped but it was misty. The defendant's brakes were slightly off balance, such as to cause the car to swerve slightly when the brakes were suddenly applied. At the time of the accident, the plaintiff was asleep and the car was proceeding at such a high rate of speed that when it swerved off the road, it rolled approximately 150 feet and turned over 6 or 7 times. It hit a barbed wire fence and stopped after it had broken through it and into a field.

After reviewing many cases and discussing the holdings in each of them, the Supreme Court of Oklahoma said:

"Measured by the construction of every other court which has construed the statute, we are unwilling to say that the evidence in this case, though sufficient to show negligence in its ordinary sense, was sufficient to show a willingness to inflict injury on plaintiff or any of his other guests.

"There was no error in sustaining the demurrer to plaintiff's evidence. Judgment affirmed."

The New Mexico statute is an exact copy of the guest statute of Connecticut, (apparently the first to be enacted, 1927, since repealed) and when the legislature of New Mexico adopted this statute, they also adopted the construction that the highest courts of Connecticut had placed upon it up to that time. Lee v. Scott, 177 S. E. 92, 50 Ga. App. 39.

In Ascher v. H. E. Freeman, Inc., 110 Conn. 1, 147 Atl. 263 l. c. 264, the Supreme Court of Connecticut, in speaking of this statute, said:

"Conduct indicating a reckless disregard of the rights of others is quite distinct in its characteristics from merely negligent conduct. It is conduct which indicates an indifference to the consequences of action and constitutes wanton misconduct. Menzie v. Kalmonowitz, 107 Conn. 197, 199, 139 A. 698; Bordonaro v. Senk, supra. Conduct arising from momentary thoughtlessness, inadvertence, or from an error of judgment, does not indicate a reckless disregard of the rights of others."

Again in Maher v. Fahy, 151, Atl. 318, 112 Conn. 76, the same Court observed:

"We do not share the doubt expressed by the trial court, as to whether he was guilty of negligence, but it was incumbent upon the plaintiff to prove more than that, for 'heedless and reckless disregard of the rights of others' constitutes, in substance, wanton misconduct, consisting of a reckless disregard of the just rights or safety of others in their lives, limbs, health, reputation, or property, or of the consequences of one's action."

South Carolina adopted the Connecticut statute, and the Court of Appeals of Georgia in construing that statute held that "heedlessness or his reckless disregard of the rights of others" meant an improper or wrongful conduct and constitutes wantonness, evincing a reckless indifference to consequences. Lee v. Scott, supra.

In Anderson v. Anderson, 50 Pac. (2) 995, 142 Kans. 463, the evidence showed that the defendant was driving the car at a speed between 65 and 70 miles per hour. The road was smooth except for a ridge of sand at the side. On the morning of departure for the trip, the men at the filling station noticed the tire on the left rear was low, they filled it with air, one of the boys in the car thought it should be changed but defendant said he did not have time to wait. The tire had been used on the car for 17,000 miles, was weather checked and showed a lot of wear. An almost new tire was being carried as a spare. The car started swerving across the highway, backwards and forwards, then there was one violent swerve and it turned over. After the accident, it was noticed that there was a nail in the new tire on the right rear wheel. Some witnesses testified that the worn tire on the left rear wheel was the one they felt go down. The defendant had tried to check the car immediately after it began to swerve. Kansas has a guest statute exempting the host from liability except from "gross and wanton negligence." The plaintiff recovered a judgment against the defendant, who appealed. The Supreme Court of Kansas reversed the case and directed the trial judge to enter judgment for the defendant. See also Lennon v. Woodbury, 3 Cal. App. 595, 40 Pac. (2) 292.

In Craig et ux. v. McAtee et al., 160 Wash. 337, 295 Pac. 146 the court set forth the Connecticut Guest Statute and held that there was no appreciable difference between the meaning of "heedlessness or his reckless disregard of the rights of others" and "gross negligence."

In the case at bar, the defendant had endeavored to obtain new tires. He had failed. Why his request was refused, does not appear, but it could be reasonably assumed that it was because the rationing board thought the tires he had were not sufficiently worn and unsafe to be replaced. Defendant, after inspection, decided that the tires were good enough to make the trip. He inspected them four times a day during the trip. He tried to drive not in excess of 45 miles per hour. He had his wife and sister-in-law with him. His relationship

with them seemed to be good and the evidence does not show that he had other than the kindest feelings toward his wife and plaintiff. To say under these circumstances that he was heedless of their safety (to say nothing of his own) and that he had a reckless and wanton disregard for their rights would be going much farther than the evidence justifies.

It is contended by respondent that rationing order "1A" practically had the effect of a law limiting the speed of automobiles. We do not think so and the cases cited by respondent on that point do not so hold. It is a matter of common knowledge that the rationing act as related to tires was conceived for many purposes. Civilian use was restricted because of the shortage of natural rubber and the necessity of giving military and industrial claims a priority. The "safeguarding jealously of every ounce of rubber in the country," was one of the acute needs of war. Lowering the speed limit necessarily resulted in the conservation of fuel, there was a lack of tire cord, there was shortage of carbon blacks. All these elements entered into the reasons for promulgation of ration order "1A". It was not enacted for the purpose of restricting the speed of automobiles so as to prevent accidents, neither did it have the effect of making a person who exceeded 35 miles per hour negligent *per se*. According to the order itself, exceeding the limit fixed therein could be considered by local rationing boards as an abuse of tires. Assuming, but not deciding that Ration Order "1A" was admissible and that it creates a national speed limit, driving in excess of it does not change ordinary negligence into heedlessness and a reckless disregard of the rights of others. Traveling at a speed that violates municipal and state restrictions does not of itself show more than ordinary negligence. Hennon v. Hardin, supra. Stephens et al. v. Weigel (Ill. App.) 82 N. E. 697.

It has been many times held that speed alone is not sufficient to show more than ordinary negligence, (Griffin Lumber Co. v. Harper (Ala.) 39 So. (2) 298. 60 C. J. S. Page 1030, Sec. 404.) and though an operator of a motor vehicle knows of the unsafe condition of his tires, and an injury results because of a blowout, that does not, of itself, show "gross negligence". Gifford v. Dice, 269 Mich. 293, 257 N. W. 830, 96 A. L. R. 1477. In this case the court said:

"Any different rule would permit a hitch hiker to mulct an owner for not keeping his car in repair. Defendant, for his own purposes, had a right to get all the use he could out of the tire, and his own purposes were not curtailed nor liability entailed by reason of plaintiff becoming his guest."

If plaintiff showed negligence on the part of defendant, it was no more than ordinary negligence, and did not show the degree of culpability required by the statute. The court should have sustained

defendant's motion for a directed verdict. The judgment of the trial court is reversed and it is directed to set aside the judgment for plaintiff and enter one for the defendant in accordance with this opinion. *Dew, P. J.*, and *Cave, J.*, concur.