387 P.2d 874

Otelia GARRETT and T. L. Wilson, Administrator of the Estate of Juanita Pittman, Deceased, Plaintiffs-Appellants,

v.

Frederick B. HOWDEN, Administrator of the Estate of Willie Charles, Deceased, Defendant-Appellee.

No. 7281.

Supreme Court of New Mexico.

Dec. 23, 1963.

Smith, Kiker & Ransom, Albuquerque, for appellants.

Iden & Johnson, Richard G. Cooper, Albuquerque, for appellee.

CARMODY, Justice.

This is an appeal from a directed verdict in favor of the defendant (appellee here) in an action under the guest statute, § 64–24–1, N.M.S.A.1953.

Two questions are presented, (1) whether the court erred in rejecting testimony of a statement claimed to have been made by an unidentified bystander at the scene of the collision as to the speed of the death car prior to and some distance away from the accident; and (2) whether there were sufficient facts proven showing heedless or reckless disregard of the rights of others so as to warrant the submission of the case to the jury.

Willie Charles, the defendant administrator's decedent, was driving to Oklahoma in order to return his wife and son to California. Charles left San Francisco at about noon on a Friday and was accompanied by his sister, Otelia Garrett, one of the plaintiffs. They were to proceed to Bakersfield, California, to pick up another sister, the deceased Juanita Pittman. Between San Francisco and Bakersfield, Charles bought half a pint of whiskey and had two or three drinks over the protests, with respect to drinking and driving, by his sister. She was told to mind her own business. About halfway to Bakersfield, Mrs. Garrett noticed that the bottle was a little more than half gone, but she didn't see Charles drink any more of it. He, however, was driving, according to Mrs. Garrett, "pretty fast," but was stopped by a highway patrolman and thereafter proceeded on to Bakersfield at a normal speed. They stopped and picked up Mrs. Pittman in Bakersfield, and then during the night proceeded to drive to Flagstaff, Arizona. Sometime that night, Charles stopped the car and slept for about an hour, but this

was the only sleep he had during the unfortunate trip. When either of his sisters told him to take a nap, he told them to mind their own business. In Flagstaff, Charles bought a pint of Scotch, and both sisters protested about his drinking and driving. They were again told to mind their own business. Thereafter, although the sisters repeated their protests, Charles had three or four drinks out of the pint. Neither of the sisters had anything to drink on the trip. As they proceeded east from Flagstaff, where they had had breakfast, the speedometer reading was about 80 miles an hour. Both of the sisters protested about the speed all the way, but Charles slowed down only for traffic and at one point when he was stopped by an officer handing out pamphlets warning drivers to slow down. Within a very few minutes prior to the accident, Mrs. Garrett noticed the speedometer as reading 80 miles an hour, and she told her brother that he should slow down or he wouldn't get to Oklahoma alive. His response was that she should mind her own business, that he knew how to drive. The next thing that Mrs. Garrett remembered was her sister saying, "I told you so," Mrs. Garrett raised up, being in the back seat, and saw the car strike the rear of another automobile.

The accident happened where a 4-lane strip of Highway 66 was being newly constructed some 40 miles west of Albuquerque, New Mexico. Traffic was allowed on a portion of the new highway and then diverted sharply to a detour over which both east- and west-bound traffic proceeded in their respective single lanes. About a quarter of a mile west of the detour was a sign warning the traffic of road construction within 500 feet and of a speed limit of 25 miles per hour. Fifteen hundred feet from the detour was a warning sign. Another sign was within 500 feet of the detour and bore a speed limit of 25 miles an hour. Just before the detour was a barricade with a large "slow" sign warning of the detour, and a large detour sign on the barricade pointing to the right. There was a string of about ten cars approaching the detour from the west at about 30 miles per hour. The weather was clear and dry, and it was about 1:30 on Saturday afternoon. The last car in line had slowed to about 10 or 20 miles an hour, when it was struck from the rear without warning and with great force by the Charles automobile, thereby knocking it in a forward direction. Fortunately, the driver was able to in some manner control his car and bring it to a stop about 500 feet ahead; however, the impact buckled the frame, tore the front seat off its track, and did other damage. In the meantime, apparently as a result of striking the aforementioned car in the rear, Charles lost control of his car and collided broadside with a tractor trailer which was proceeding in a westerly direction on the detour. The

Charles car skidded 205 feet from the point where it struck the other automobile to the point of its impact with the truck and tractor. Charles and his sister Juanita Pittman were instantly killed, and Mrs. Garrett suffered severe injuries.

An expert witness calculated the speed of the Charles car on the basis of the 205 feet of skid marks, and determined that the minimum speed of the vehicle was 65 miles per hour, had it come to a stop without any impact. This particular testimony is in some ways attacked by the appellee, but no cross-appeal having been taken, we are bound by the ruling of the trial court, which, in effect, left the weight of this testimony to the jury.

One other item of testimony which was admitted was the res gestae statement made by the plaintiff, Mrs. Garrett, within two minutes following the accident. It was testified that Mrs. Garrett kept repeating, "Lord, she had been trying to get him to slow down all morning. He had been driving too fast."

 We will discuss the points relied upon in the order presented.

One of the construction workers, who was near the scene of the accident, was called as a witness, and plaintiffs sought to elicit from him certain statements made by an unidentified lady who arrived at the scene of the accident within two minutes of the collision. The attempt was rejected by the trial court, and thereafter, outside the presence of the jury, the plaintiffs offered to prove that the unidentified motorist, having been told that two people had been killed in the accident, said:

"A. 'It's a wonder he hadn't of killed more than that one and himself, for he passed me several times from here to Gallup. He passed me right back up the road,'—she was doing the speed limit which was 70" [sic] he passed her and she bet he was doing better than 100. That's all that she said."

The actual location where the deceased Charles had passed this unknown lady was not specifically identified, although it might be construed from the testimony that it had occurred within a mile and a half of the scene of the accident.

Plaintiffs urged at the trial and again here that such a statement was part of the res gestae and therefore should be accepted in this instance on the basis that it was the spontaneous utterance of a bystander on seeing a horrible, gruesome sight. Plaintiffs also assert that the statement should be admitted on the grounds that it amounted to corroboration of the testimony of Mrs. Garrett and the expert witness as to the speed of the death car immediately before the impact; and plaintiffs also argue that the admission of this bystander's statement would help forge a chain of actions showing that the deceased Charles was driving in a

heedless, reckless or wanton manner at the time of the collision, thereby showing his state of mind.

The question was presented to the trial court and the court initially ruled that the testimony was hearsay; and subsequently that in addition to being hearsay, it had nothing to do with the res gestae and that it would be unfair to allow it.

This is a matter of first impression in New Mexico, although the admissibility of spontaneous utterances was considered in State v. Godwin, 1947, 51 N.M. 65, 178 P. 2d 584, and in Lance v. New Mexico Military Institute, 1962, 70 N.M. 158, 371 P.2d 995. However, neither of these cases is of any particular aid to us in the present case. It is to be observed that there is some conflict among the authorities as to the admissibility of testimony with respect to the manner in which a motor vehicle had been operated prior to reaching the scene of an accident. There is an extensive annotation on this subject at 46 A.L.R.2d 9, but, unfortunately, the cases therein annotated, in almost every instance, relate to testimony of a witness, not statements attributed to an unknown or unnamed bystander. More in point are the extensive annotations appearing in 163 A.L.R. 15, particularly V., d, at 193, and 53 A.L.R.2d 1245.

As is so often true in a field of law in which there are hundreds of cases, the decisions of the courts do not seem to be entirely in accord. In most instances, the admissibility or nonadmissibility of bystanders' statements is peculiarly linked to the facts of the individual case. Therefore, we do not feel that the citing of many authorities would be particularly beneficial, and it is to be observed that both of the parties to this appeal have been able to cite cases which seem to generally support their contentions. However, one matter does seem to be rather clear, and that is that the determination of the admissibility of the testimony is a matter within the sound discretion of the trial court, and that that court's determination, in the absence of a clear abuse of discretion, will not be disturbed on appeal. Kelley v. Dickerson, 1938, 213 Ind. 624, 13 N.E.2d 535; Musgrave v. Karis, 1945, 63 Ariz. 417, 163 P.2d 278; Cummings v. Illinois Cent. R. Co., 1954, 364 Mo. 868, 269 S.W.2d 111, 47 A.L.R.2d 513.

We are particularly impressed with the rule announced by the Supreme Court of Ohio in Potter v. Baker, 1955, 162 Ohio St. 488, 124 N.E.2d 140, 53 A.L.R.2d 1234. In that case, the trial court had refused to allow the plaintiff to testify as to a statement she had heard, made by a bystander as the plaintiff regained consciousness after being struck by an automobile. The court stated:

"Our conclusion is that hearsay testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous ex-

clamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over declarant's reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

"However, we also are of the opinion that any reasonable doubt about the accuracy of the testimony of the witness, as to the words of such statement or declaration of another, other than a mere doubt as to the veracity of such witness, may also be considered by the trial judge in determining whether such statement or declaration should be admitted under the exception to the hearsay rule for spontaneous exclamations; and that, even though the reviewing court, if sitting as trial judges, would have held such statement or declaration admissible in evidence under the exception to the hearsay rule for spontaneous exclamations, a decision of the trial judge rejecting such statement or declaration will not ordinarily justify a reversal where such decision appears to have been a reasonable decision."

The rule as stated above is substantially that which is propounded in 6 Wigmore on Evidence, 3d ed., §§ 1749 and 1750, with the modification (with which we agree) that the discretion of the trial court must be reasonably exercised. Wigmore, to the contrary, would seemingly recommend that the discretion of the trial court be absolute.

In the instant case, there appear to be one or more reasons why the statement should or should not have been admitted in evidence. Without detailing the same, it does not appear to us that the ruling of the trial court was unreasonable, and we decline to interfere with his decision. We fully realize that the plaintiffs assert that the trial court did not truly exercise its discretion in its ruling, but from our examination of the record together with the cases cited, we believe that full consideration was given to

the question and that the court was under no misapprehension of the law on the subject.

We therefore proceed to appellant's second point of alleged error, that being whether the court should have refused to direct a verdict, and in deciding this point we give no consideration to the proffered testimony above discussed.

Viewing the evidence in the light most favorable to the plaintiffs, it is claimed that the proof of certain facts warrants submission of the case to the jury, i. e., that the accident was caused by the heedlessness or reckless disregard of the rights of others on the part of the operator. It should be noted that there is no claim that the accident was intentional. It is urged that all of the facts considered together are evidence of the necessary state of mind on the part of the driver to warrant submission of the case to the jury. These facts consist of a showing of a speed of 80 miles per hour previous to the accident, and a minimum speed of 65 miles per hour at the time of the accident; the evidence on the part of Mrs. Garrett that, throughout the trip and prior to the accident, both she and her deceased sister asked the driver to slow down but that he answered with a remark such as "mind your own business"; the evidence that the driver had been drinking many hours before the accident, and the evidence of absence of sleep; the testimony as to the existence of the warning signs, with the speed limit noted at 25 miles per hour, and the evidence as to the skidding of the death car and the damage to both it and the other vehicles which is an indication of the speed at the time of the collision and is corroborative of the testimony given with respect to the speed both before and at the time of the tragedy.

The so-called guest statute (§ 64–24–1, N.M.S.A.1953) was adopted by our legislature from the statute then in force in the state of Connecticut, and we adopted the construction given the statute by the highest court of Connecticut. Smith v. Meadows, 1952, 56 N.M. 242, 242 P.2d 1006. Connecticut has since repealed the act, but there are approximately thirty states which have enacted statutes limiting the right of recovery of passengers who are being transported without pay. The cases construing these statutes are almost without number and, since the adoption of the New Mexico statute in 1935, there have been a considerable number of cases before this court dealing with its provisions in one way or another.

The difficulty in this type of a case is that prior authorities merely set out general guidelines, it being impractical, if not impossible, to state a rule which will apply to the facts of any particular case. Extremely helpful annotations concerning the guest statutes are to be found in 31 Negl. & Comp. Cas.Ann. 78; 34 Negl. & Comp.Cas.Ann.

346; 36 Negl. & Comp.Cas.Ann. 337; 15 Negl. & Comp.Cas.Ann. (N.S.) 420, at 435–444; 3 Negl. & Comp.Cas.Ann. (3d ed.) 321, at 379 and 395; and 13 Negl. & Comp. Cas.Ann. (3d ed.) 112. In addition, various volumes of A.L.R. and A.L.R.2d contain annotations on the subject, not to mention extensive discussions both in various legal encyclopedias and Law Review articles. However, as stated, no two cases are exactly the same. Added to this is the more or less admitted division among the various courts throughout the country which have construed the statutes, either strictly or liberally, depending upon the viewpoint of the court at the time of the decision.

As has been mentioned, our statute came from Connecticut, and it would appear that a substantial number of the Connecticut decisions, prior to our adoption of the statute, required a relatively strong showing on the part of a plaintiff guest to surmount the prohibition contained in the statute. Silver v. Silver, 1928, 108 Conn. 371, 143 A. 240, 65 A.L.R. 943; Bordonaro v. Senk, 1929, 109 Conn. 428, 147 A. 136; Berman v. Berman, 1929, 110 Conn. 169, 147 A. 568; Ascher v. H. E. Friedman, Inc., 1929, 110 Conn. 1, 147 A. 263; Maher v. Fahy, 1930, 112 Conn. 76, 151 A. 318; Anderson v. Colucci, 1932, 116 Conn. 67, 163 A. 610; Shinville v. Hanscom, 1933, 116 Conn. 672, 166 A. 398; Palmer v. R. & H. Pant Co., 1933, 117 Conn. 124, 167 A. 94; Vanderkruik v. Mitchell, 1934, 118 Conn. 625, 173

A. 900; and Riordan v. Gouin, 1934, 119 Conn. 235, 175 A. 686. However, we observe that even some of the Connecticut decisions do not appear to be entirely consistent with those above cited. See, Peterson v. Connecticut Co., 1933, 116 Conn. 237, 164 A. 637; and Doody v. Rogers, 1933, 116 Conn. 713, 164 A. 641. The New Mexico cases on the subject are almost as difficult to reconcile, if they can be reconciled, as cases from many other jurisdictions.

Thus, in what was apparently our first decision under the guest act (Stalcup v. Ruzic, 1947, 51 N.M. 377, 185 P.2d 298), the court affirmed a judgment for the plaintiff, finding substantial evidence of a heedless and reckless disregard for the safety of passengers. This case did not discuss any authority with respect to such a holding and apparently based the decision upon the facts stated, which related principally to excessive speed on a city street at night, together with an awareness on the part of the driver of the danger.

In Gomez v. Rodriguez, 1957, 62 N.M. 274, 308 P.2d 989, we reversed a directed verdict for the defendant, principally based upon the elements of drinking, excessive speed, attempting to get away from an officer, refusal to slow down despite pleas of passengers, and familiarity with the road; and in Potter v. Wilson, 1958, 64 N.M. 211, 326 P.2d 1093, where there was a showing of intoxication, a speed of 70 miles per

hour on an air force base where the speed limit was 25 miles per hour, and a refusal to slow down upon request, we held that there was evidence of utter irresponsibility on the part of the defendant, much more than speed alone, thus avoiding the bar of the statute.

In Amaro v. Moss, 1959, 65 N.M. 373, 337 P.2d 948, we held that excessive speed on an icy road in a fog was sufficient to present a jury question as to wanton misconduct evidencing a heedless or reckless disregard of the safety of others; and in Alford v. Drum, 1961, 68 N.M. 298, 361 P. 2d 451, we found sufficient evidence to go to the jury in a case where it was shown that the defendant was driving at 109 miles per hour and was unable to make a curve which was posted at a speed limit of 30 miles per hour, wherein the defendant said, "I think we can make it."

However, in other cases, we have found lack of sufficient evidence to justify a verdict under the statute, such as Smith v. Meadows, supra, in which, although there was some evidence of drinking and the defendant was driving between 60 and 70 miles per hour, he struck the rear of a car stopped on the highway. In this case, we held that more than speed alone is required in order that a plaintiff could recover under a claim of heedless and reckless disregard of the rights of others.

Menkes v. Vance, 1953, 57 N.M. 456, 260 P.2d 368, involved an accident at night on a bladed road with slight turns and a warning from the plaintiff that the defendant should have taken another road if he wished to drive so fast. This court held that the plaintiff's testimony, indulging all reasonable inferences flowing therefrom, failed to establish heedlessness and reckless disregard of the rights of the plaintiff so as to warrant recovery under the guest statute.

In Fowler v. Franklin, 1954, 58 N.M. 254, 270 P.2d 389, there was evidence of excessive speed and perhaps intoxication, but we held that that was not sufficient evidence to establish heedlessness or the reckless disregard of the rights of others.

Carpenter v. Yates, 1954, 58 N.M. 513, 273 P.2d 373, related to excessive speed at night on a narrow highway, the car being overloaded and the defendant having failed to slacken his speed when partially blinded by the lights of an oncoming car. We there held that "there must be some substantial evidence of a particular state of mind upon the part of the defendant driver," comprehending evidence of an utter irresponsibility or of a conscious abandonment of any consideration for the safety of passengers. In this case, although the court stated that negligence was clearly present, there was not substantial evidence of the required state of mind as was necessary to escape the prohibition under the statute.

De Blassie v. McCrory, 1956, 60 N.M. 490, 292 P.2d 786, involved a case of a de-

fendant falling asleep at the wheel. Prior thereto, at about 1 :00 o'clock in the morning, the driver was getting sleepy and he rolled down the window of his car, slowed his speed and turned on the radio. Shortly thereafter, he fell asleep and the car was wrecked. We therein held that the required state of mind was not shown and that there could be no recovery by the plaintiff.

Very recently, in Valencia v. Strayer, 73 N.M. 252, 387 P.2d 456, we sustained the granting of a directed verdict, on the ground that although there was evidence of negligence, the proof was not sufficient to indicate the particular state of mind on the part of the driver to take the case outside the provision of the statute.

Inferentially, the statute was considered in Berkstresser v. Voight, 1958, 63 N.M. 470, 321 P.2d 1115, but that decision is not pertinent here.

· In Carpenter v. Yates, supra, we stated that the particular state of mind required is closely aligned to that state of mind required to convict for involuntary manslaughter where the death results from the operation of an automobile. In view of this statement, we take note of certain of our cases involving criminal prosecutions for involuntary manslaughter.

A conviction was sustained in State v. Turney, 1937, 41 N.M. 150, 65 P.2d 869, but reversed in State v. Sisneros, 1938, 42 N.M. 500, 82 P.2d 274. There was an af-

firmance of the conviction in State v. Alls, 1951, 55 N.M. 168, 228 P.2d 952. In State v. Clarkson, 1954, 58 N.M. 56, 265 P.2d 670, which was cited and discussed in Carpenter v. Yates, supra, we held that a manslaughter conviction must be reversed for a failure to show the state of mind that was "totally and wantonly reckless." In that same year, in State v. Rice, 58 N.M. 205, 269 P.2d 751, we affirmed a conviction of involuntary manslaughter, saying that merely driving on the wrong side of the road could be inadvertence and not sufficient to convict, but that driving on the wrong side of the road coming up a hill, where visibility was obstructed, showed a heedless and reckless disregard of the rights of others. So also the conviction was sustained in State v. Tracy, 1958, 64 N.M. 55, 323 P.2d 1096, which involved passing on a hill in violation of a yellow no-passing line; and in State v. Romero, 1961, 69 N.M. 187, 365 P.2d 58, we sustained a conviction in a rear-end collision in Albuquerque where the defendant was traveling from 60 to 80 miles per hour in a 35-mile zone, there being evidence of intoxication.

A detailed consideration of all of the New Mexico cases would not be complete without mention of Gill v. Hayes, 1940, 188 Okl. 434, 108 P.2d 117, wherein the Supreme Court of Oklahoma, interpreting the New Mexico guest statute prior to any decisions by this court on the subject, ruled that although negligence had been shown, there

was not sufficient evidence to prove a willingness to inflict an injury on the plaintiff and the other guests. This was a case involving the operation of an automobile at 70 to 80 miles per hour over the protest of the guest. So also the Kansas City Court of Appeals, in the case of Woolf v. Holton, 1949, 240 Mo.App. 1123, 224 S.W.2d. 861, set aside a jury verdict in a case arising under the New Mexico statute, holding that the evidence failed to establish heedlessness or reckless disregard of the rights of the plaintiff. This latter case, as did Gill v. Hayes, supra, contains a discussion of the reasons for the adoption of the guest statute; a discussion of the Connecticut decisions and the decisions of other states which had, like New Mexico, adopted the Connecticut statute; and, lastly, Woolf distinguished Stalcup v. Ruzic, supra, the only case, at the time, where this court had passed on the statute.

Our purpose in briefly discussing the cases construing our statute is to show that apparently there is no fixed pattern which has been followed with any definite consistency. This is so because each case involves special fact situations and must therefore be governed by what is thought to be proper or improper to the minds of reasonable men. We would be less than frank if we did not take note of the fact that our own driving habits and experiences, and the observation of those of others, at least subconsciously, has an influence upon the judgment of judges and courts which is impossible to calculate. Consideration must also be given to the ruling made by the trial court, because he had the advantage of seeing and hearing the witnesses as distinguished from the appellate court having only the typewritten record upon which to rely. We do not mean, of course, to imply that the trial court's decision should be blindly followed, but only that it is entitled to great consideration. One other matter of importance, which is rarely mentioned by the courts, is that so often individuals are inclined to judge cause based upon the result of an accident, rather than considering the cause without regard to the aftermath. This thought is well expressed in Neessen v. Armstrong, 1931, 213 Iowa 378, 239 N.W. 56:

" * * * The mind is prone to look upon the result, but unless the acts of the defendant would have been reckless within the meaning of the law without injury resulting to [the deceased] * * *, they are not reckless merely because [the deceased] * * * lost his life. * * *"

With this attitude in mind, we approach the problem here involved.

It is singularly ineffectual to attempt to compare the facts before us to those of any of our prior cases. It is also not practical to say that certain elements of negligence

are sufficient or insufficient to portray a particular state of mind on the part of the driver. A comparison might be made to a jigsaw puzzle—the individual pieces are meaningless by themselves but, when placed together, the entire picture becomes clear. So it is here; considering all of the evidence collectively, with the reasonable inferences drawn therefrom, we cannot conclude otherwise than that factual questions are raised which necessitate submission of the case to the jury. Admittedly, speed alone is not sufficient (Smith v. Meadows, supra), and other items of claimed negligence may, under some circumstances, amount to nothing more than momentary thoughtlessness, inadvertence, or error in judgment, and would not justify a determination that the driver was wantonly reckless. See Ascher v. H. H. Friedman, Inc., supra. So, also, protests as to the speed and other conduct on the part of the driver may or may not be evidence of irresponsibility or conscious abandonment of any consideration for the safety of passengers. It cannot be that every protest by a passenger, if disregarded, would be sufficient to remove the case from the operation of the statute. See Bobich v. Rogers, 1932, 258 Mich. 343, 241 N.W. 854. On the contrary, however, the plaintiffs here were entitled to the benefit of such favorable inferences as might be drawn from the protests, although it would be for the jury to determine whether the repeated protests

and the driver's usual response of "mind your own business" was sufficient, together with the other circumstances, to show the state of mind required to surmount the prohibition of the statute.

It should also be added that the fact that the driver of the vehicle apparently ignored the signs warning him of danger might only be simple negligence, but when this evidence is considered in conjunction with the evidence of speed corroborated by the amount of skidding and the damage to the vehicles, it could, if believed, be substantial evidence of utter irresponsibility or a conscious abandonment of any consideration of the safety of the passengers.

Lastly, although we do not believe the evidence is entitled to the great weight contended for it by the plaintiffs, the proof of drinking and lack of sleep do constitute additional circumstances which may or may not be of help in determining the driver's state of mind. The evidence as to these two matters is not direct evidence which might remove the case from the provision of the statute, because the proof is deficient as to any showing that either of them had any effect on the driver's ability. Only when considered together with all of the items of claimed negligence can these two matters be regarded as a part of the substantial evidence of the particular state of mind required under our decision in Carpenter v. Yates, supra.

Although we are reluctant in making any comparison between the facts of this case and those of any of our prior cases, we would observe that our ruling in this case is somewhat analogous to our decisions in Potter v. Wilson, supra, and Alford v. Drum, supra. The facts here are obviously distinguishable from those considered in our prior decisions where it was determined that there was not sufficient evidence to overcome the bar of the statute.

We do not wish to be understood as saying, as a matter of fact, that liability was established, but only that there was a sufficient showing to justify a denial of the motion for directed verdict. Neither do we wish this opinion to be construed as holding that merely because there is proof of two or more items of negligence, that a jury question is necessarily presented in all cases, see Valencia v. Strayer, supra. Nevertheless, under the facts before us, it is our considered judgment that the trial court erred in directing a verdict in favor of the defendant.

The trial court sustained the motion solely upon the basis that, in his judgment, the acts of the driver were not sufficient to remove the action from the operation of the guest statute. However, defendant had included in his motion the request that the verdict be directed because of the contributory negligence or assumption of risk on the part of the defendants. Appellee, in his brief, urges that the two sisters were guilty of contributory negligence as a matter of law. Inasmuch as the question was not passed upon by the trial court, we do not deem it necessary to further extend this opinion in answer thereto, other than to say that in Berkstresser v. Voight, 1958, 63 N. M. 470, 321 P.2d 1115, assumption of risk was considered to be a jury question, and in Curtis v. Schwartzman Packing Co., 1956, 61 N.M. 305, 299 P.2d 776, in addition to holding that contributory negligence was a matter for determination of the jury, we held that there was no burden upon the plaintiff to show freedom from negligence as a part of the case in chief. Inasmuch as the case must be retried, there is no necessity for any further comment on this question.

The judgment will be reversed and the cause remanded to the trial court with directions to set aside the verdict and set the cause for a new trial. It is so ordered.

COMPTON, C. J., and MOISE, J., concur.