292 P.2d 786

**Larry DE BLASSIE, a minor, through Paul De Blassie, his father and next friend, Plaintiff-Appellant,**

**v.**

**J. V. McCRORY and John McCrory, Defendants-Appellees.**

No. 5985.

Supreme Court of New Mexico.

Jan. 20, 1956.

Rehearing Denied Feb. 3, 1956.

Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, for appellant.

McAtee & Toulouse, Albuquerque, for appellees.

SADLER, Justice.

We are called upon to determine on this appeal whether the trial court erred in granting summary judgment for the de-

fendants in an action prosecuted by the plaintiff, a minor, through his father as next friend, under 1953 Comp. § 64–24–1, the so-called Guest Statute. The material facts are set out in the findings made by the trial court upon granting defendant's motion for summary judgment. They will be recited.

On the night of October 30–31, 1954, defendant, John McCrory, accompanied by Beverly Adams, Larry DeBlassie, the minor on whose behalf this suit is brought, and his wife Barbara, along with two other couples traveling in another car, visited the Pink Garter (a night club) in Lamy, New Mexico to dine and dance. After arriving there John McCrory had one drink at approximately 9:00 p. m. before their party ate dinner but no member of the party, including said defendant, was drunk or under the influence of alcoholic beverages.

On the trip back to Albuquerque the defendant, John McCrory, was driving the automobile which belonged to his father. Beverly Adams, John's date, was asleep on the front seat beside him while Larry De-Blassie and his wife Barbara, the only other occupants of that car, were asleep in the back seat. Shortly prior to the accident which resulted in plaintiff's injury, John McCrory, driver of the car, became sleepy and rolled down the window of the car. He recalled coming down a hill and also recalled that there was a curve at the bottom of the hill. The last thing he remembered prior to lapsing into unconsciousness was a white post which his car hit and, using his own words, he found himself "fighting the wheel." The plaintiff minor, Larry DeBlassie, was severely injured as a result of the accident.

At some time subsequent to the accident, the defendant, John McCrory informed Barbara DeBlassie and the plaintiff, Paul DeBlassie (father of Larry DeBlassie), that he "went to sleep at the wheel." Nevertheless the evidence fails to disclose heedless or reckless disregard of the rights of others, or a particular state of mind on the part of the defendant, driver of the car, which would evidence an utter irresponsibility on the part of said defendant, or of conscious abandonment of any consideration for the safety of passengers by him.

From the foregoing facts found by the trial court, it concluded that the so-called Guest Statute, 1953 Comp., § 64–24–1, applies and governs this particular action. It followed with its decisive conclusions II and III, reading as follows:

"II. That the said evidence does not disclose heedlessness or reckless disregard of the rights of others, or a particular state of mind upon the part of the said defendant driver which would evidence an utter irresponsibility on the part of the defendant, John McCrory, or of the conscious abandonment of any consideration for the safety of passengers by the said defendant driver.

"III. That the said complaint should be dismissed with prejudice at costs to plaintiff, and both plaintiff's and defendants' requested findings of fact and conclusions of law are denied."

It is from the judgment entered pursuant to the foregoing findings and conclusions that the plaintiff as an appellant prosecutes this appeal. While three assignments of error have been made by the plaintiff, as appellant, all are argued under a single point, reading as follows:

"The court erred in granting motion for summary judgment when there was evidence before the court from which a jury could reasonably find that the defendant driver was sleepy and tired and being cognizant of his condition nevertheless continued to drive until he fell asleep and lost control of the automobile."

The counsel for plaintiff would agree, perhaps, that the trial court correctly ruled on the motion for summary judgment, were it not for two findings to be found in the transcript. They are findings IV and VII. Finding IV reads: "That shortly prior to the said accident, the defendant, John McCrory, was sleepy and rolled down the window."

Finding VII reads: "That at a later date, the said defendant, John McCrory, advised Barbara DeBlassie and the plaintiff, Paul DeBlassie, that he 'went to sleep at the wheel'."

The testimony on which the two critical findings are based is to be found in the deposition of Barbara DeBlassie, wife of the injured minor, on whose behalf the action was brought. In her deposition, which was one of several accompanying the motion for summary judgment, she testified on direct examination to a conversation with the defendant, John McCrory, occurring some time after the accident, as follows:

"Q. Did you talk to John after the accident? A. Yes, I did.

"Q. What did you talk to him about? A. Well, he was, felt bad about it and he just told me that he was sorry and everything that it happened, he didn't mean to, that he had just fallen asleep.

"Q. Did you ask him whether or not he had fallen asleep, or did he volunteer the information? A. He volunteered the information.

"Q. That he had fallen asleep? A. Yes.

"Q. Do you know what time it was when the accident happened? A. It was about one, I guess.

"Q. Did you ever see the other car that was in the party? A. No.

"Q. All he told you is that he must have fallen asleep, is that right? A. Yes.

"Q. What else did he tell you? A. Told me that he had gotten sleepy and that he had, he said he had rolled down the window, told me that he had gotten

sleepy and rolled down the window and turned on the radio or something, and that he had slowed down considerably.

"Q. Prior to the accident? A. Yes.

"Q. What else did he tell you, Barbara? A. That's all.

"Q. Is that all he has ever told you? A. That he had gotten tired and fallen asleep.

"Q. And he had slowed down? A. Yes, sir."

Our Guest Statute 1953 Comp., § 64–24–1, reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the right of others."

It may be seen from a reading of this statute there can be no recovery for accidental injury thereunder "unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

The statute has been construed by us on several occasions. See Smith v. Meadows, 56 N.M. 242, 242 P.2d 1006; Menkes v. Vance, 57 N.M. 456, 260 P.2d 368; Fowler v. Franklin, 58 N.M. 254, 270 P.2d 389; Carpenter v. Yates, 58 N.M. 513, 273 P.2d 373. In Smith v. Meadows, supra, we approved definitions of the type of negligence required to establish liability under the Connecticut statute, from which state we took ours as "wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another." Bordonaro v. Lenk, 109 Conn. 428, 147 A. 136, 137. We quoted the opinion in Menzie v. Kalmonowitz, 107 Conn. 197, 139 A. 698, 699, as to the kind of negligence imposed as a condition of liability, as follows:

"Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action."

In Carpenter v. Yates, supra, [58 N.M. 513, 273 P.2d 375] we said:

"Conceding, under Smith v. Meadows, supra, that speed alone will not suffice to meet the test of the 'guest' statute, appellants, to overcome this limitation, rely upon the overloading of the car in which eight people were riding, the narrow highway, the absence of a center line, the partial blindness of the defendant by reason of lights, and his failure to appreciably slacken his speed.

"It is our conclusion that the trial court was correct in its ruling. There is no claim of intentional injury here; absent that, it is our understanding of the principles already enunciated by this Court that there must be some substantial evidence of a particlar state of mind upon the part of the defendant driver. That particular state of mind comprehends evidence of an utter irresponsibility on the part of defendant or of a conscious abandonment of any consideration for the safety of passengers; as indicated in State v. Clarkson, supra [58 N.M. 56, 265 P.2d 670], there is a close alignment between the state of mind required by this statute and a state of mind sufficient to convict for involuntary manslaughter for a death resulting from the operation of an automobile. * * *"

Counsel for plaintiff place great reliance on the case of Potz v. Williams, 113 Conn. 278, 155 A. 211. They remind us the case was decided prior to our adoption of the Connecticut statute, invoking the rule of adopted construction which we have recognized as to this very statute. Smith v. Meadows, supra. Potz v. Williams happens to be a "sleep" case, such as the one before us. However, the evidence there on the issue whether driving under the conditions shown amounted to "heedlessness and reckless disregard of the rights of others" is obviously stronger than the facts here show.

Witness the following language from the opinion, to wit:

"In the instant case the defendant himself testified that he had been 'driving alone all day long'; that he was pretty tired and was yawning quite a good deal; that he had dozed off once before reaching Windsor Locks, a few miles from Hartford. In answer to a question, 'So that you knew when you were at Windsor Locks that your mind wasn't very good; you were dozing off, is that right?' He answered, 'I was dozing off. I was figuring getting into Hartford and stopping and getting a cup of black coffee, or something, to see if I could wake up.' Later he gave as his reason for not stopping to get coffee at Windsor Locks or in the intervening town of Windsor that he did not like the kind served there. Finally, his examination proceeded as follows:

"Q. Well, as you left Springfield and found yourself dozing off why didn't you stop your car and rest up? A. Well, I thought I could make it.

"'Q. That you could make Stamford or Hartford? A. Hartford.

"'Q. That is you thought you could make it without falling asleep? A. Yes, sir.

"'Q. Did you notice that you were tired when you left Springfield? A. Yes, sir.'"

The later Connecticut cases of Gilmartin v. D. & N. Transp. Co., 123 Conn. 127, 193 A. 726, 113 A.L.R. 1322, and Bowen v. Hartford Accident & Indemnity Co., 122 Conn. 621, 191 A. 530, as well as Bittner v. Corby, 138 Neb. 738, 295 N.W. 277; Bryan v. Bryan, Fla., 59 So.2d 513, and Butine v. Stevens, 319 Mich. 176, 29 N.W.2d 325, all lend persuasive support in varying degrees to the conclusion we reach that there was here no evidence sufficient to go to the jury on the type of negligence required to establish liability under our Guest Statute. Mere negligence, that is, simple negligence is not enough. The most plaintiff can deduce to support the claim there was here heedless conduct, in reckless disregard of the rights of others, is the admission of the defendant driving the car that, shortly before the accident, he got sleepy, "rolled down the window * * *, turned on the radio * * * and slowed down, considerably." It is significant that, prior to the accident, he had not as in Potz v. Williams, supra, *actually fallen asleep,* once.

As pointed out both in State v. Clarkson, 58 N.M. 56, 265 P.2d 670, and Carpenter v. Yates, supra, there exists a close analogy between the state of mind which amounts to the heedlessness spelling liability under the Guest Statute and the state of mind essential to sustain a conviction for involuntary manslaughter. This is a fact commented upon significantly, both in State v. Clarkson, supra, and Carpenter v. Yates,

supra. Will any one avouch that, under the present facts, had the minor in whose behalf this action is prosecuted died instead of suffering injury, a verdict of involuntary manslaughter against John McCrory could be upheld? We think none would so affirm.

Certainly there is neither proof nor claim that the injury suffered by the minor, the real plaintiff, was intentionally inflicted. Then, on admitted facts, may the actions of John McCrory, the driver of the car, fairly be characterized as heedless, or in reckless disregard of the rights of others? We are prepared to give a negative answer to that inquiry. Had the issue been submitted and a contrary verdict returned we should be compelled to set it aside, if the trial judge did not. Actually, every step taken by the driver of the car, upon sensing a feeling of drowsiness coming upon him, was one calculated to insure greater safety, rather than one reflecting an indifference to the welfare of his passengers. He cut down his speed, substantially; lowered the window opposite him, and turned on the radio. These acts were cautionary rather than heedless.

The trial court correctly sustained a motion for summary judgment. Its action should be affirmed.

It is so ordered.

COMPTON, C. J., and McGHEE and KIKER, JJ., concur.

LUJAN, J., not participating.