425 P.2d 49

**Aubrey HUNT, Plaintiff-Appellant,**

**v.**

**Hugh F. DHEEL, Defendant-Appellee.**

**No. 8183.**

Supreme Court of New Mexico.

March 13, 1967.

Dolan, Clear & Gammill, Albuquerque, for appellant.

Modrall, Seymour, Sperling, Roehl & Harris, John R. Cooney, Albuquerque, for appellee.

OPINION

COMPTON, Justice.

The plaintiff appeals from a summary judgment under the guest statute, § 64–24–1, N.M.S.A.1953. The statute reads:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

Summary judgment was granted after taking the depositions of the parties. There is no contention made that the accident was intentional on the part of the owner-driver. The question, therefore, is whether his conduct constituted heedlessness or reckless disregard of the rights of the appellant. The question requires a determination whether the evidence and permissible inferences arising therefrom raise any genuine issue of fact as to the state of mind required by the guest statute.

About 9:30 p. m. on February 5, 1965, the appellee and appellant went to the Starlite Bar in Grants where they consumed two or three bottles of beer. While there they discussed a prospective rabbit hunt the next day. From the Starlite Bar they went to the Enchanted Bar where they again consumed two or three bottles of beer. From there they went to a cafe to eat, remaining there until around 2:30 a. m. They then went to see a Mr. Jones who lived near Kermac Mill, some 25 miles away, to ascertain if Jones could join the party on the rabbit hunt, but they did not find him.

The accident occurred on a curve on the return trip. Appellee was driving and appellant occupied the front seat with him. The roadway was sealed with asphalt, and the posted speed limit was 55 miles per hour at night. Appellee had been over the road frequently and recognized that livestock crossed the road at will, and that rocks fell thereon from trucks while hauling ore. Appellee drove at a speed from 75 to 80 miles an hour on the return trip, slowing down some three times when warned by appellant that he was driving too fast. Each time he would slow down but thereafter he would increase his speed. Appellant testified as follows:

"Q. Tell me the words that you used when he speeded up.

A. Well, I just told him, I said, 'Frank, just hold the car down a little bit, we are going too fast,' that's the way I put it to him.

Q. What did he say?

A. Well, he said 'It's all right, I'll slow down,' he said, 'everything is all right.' I said 'Christ, you are driving too fast.'

\* \* \* \* \* \*

Q. My question is, before you went into the curve there before he speeded up.

542

A. Yes, I tried to get him to slow down. I asked him two or three times there to slow it down from the mill to the curve.

Q. Can you tell me the words you used?

A. I just told him, I said 'Frank, slow the car down, we're going too fast,' He said, 'Well, everything is all right.' You know, that's all there was to it until we got right into the curve.

Q. Did you say it just as you've said it to me just now?

A. Yes, maybe a little louder.

Q. You didn't shout or you weren't—

A. Well, pretty good I did, because I knew he was getting awfully fast."

Appellee did slow down just before he reached the curve, but as he entered the curve he increased his speed to 70 or 75 miles an hour for better traction in negotiating the curve as he had done previously. The vehicle slid on loose gravel and went out of control. It overturned twice and as a result the appellant sustained serious injuries. Appellant testified that appellee's driving was not affected by the beer he drank. He also testified that the car did not weave before it went out of control.

Unquestionably, the evidence would warrant a finding of negligence, but this evidence, together with reasonable inferences arising therefrom, would not support a finding of heedlessness or reckless disregard for the safety of others, that quality of conduct necessary to establish liability under the statute. Wahlin v. Shelby, 76 N.M. 196, 413 P.2d 475; Valencia v. Strayer, 73 N.M. 252, 387 P.2d 456; De Blassie v. McCrory, 60 N.M. 490, 292 P.2d 786; Menkes v. Vance, 57 N.M. 456, 260 P.2d 368; Smith v. Meadows, 56 N.M. 242, 242 P.2d 1006. Also see State v. Hayes, 77 N.M. 225, 421 P.2d 439.

In Valencia v. Strayer, supra, quoting Carpenter v. Yates, 58 N.M. 513, 273 P.2d 373, we said:

"* * * There is no claim of intentional injury here; absent that, it is our understanding of the principles already enunciated by this Court that there must be some substantial evidence of a particular state of mind upon the part of the defendant driver. That particular state of mind comprehends evidence of an utter irresponsibility on the part of defendant or of a conscious abandonment of any consideration for the safety of passengers; as indicated in State v. Clarkson, supra [58 N.M. 56, 265 P.2d 670], there is a close alignment between the state of mind required by this statute and a state of mind sufficient to convict for involuntary manslaughter for a death resulting from the operation of an automobile. * * *"

We have considered the many cases cited by the appellant in support of his position and without discussing the merits of those cases, we find our own cases cited by him to be distinguishable on the facts. We conclude that the action of the trial court was proper and the judgment should be affirmed.

It is so ordered.

CHAVEZ, C. J., and OMAN, J., Court of Appeals, concur.