Harold BAKER, Plaintiff in Error,

v.

Zorah Ethel KNOTT, Defendant in Error.

No. 43921.

Supreme Court of Oklahoma.

Jan. 18, 1972.

Rehearing Denied March 6, 1972.

Blackstock & McMillan, Harry M. Mc-JACKSON, Justice.

Coryell, Judge.

Action by plaintiff, Zorah Ethel Knott, against defendant, Harold Baker, for damages for injuries received in an automobile accident in New Mexico. From verdict and judgment for plaintiff, defendant appeals. Affirmed.

Best, Sharp, Thomas & Glass, Joseph A. Sharp, Joseph F. Glass, Tulsa, for plaintiff in error.

In the trial court, plaintiff Zorah Ethel Knott sued her grandson, Harold Baker, for damages for injuries she received in a one-car automobile accident. She was a passenger in the car, which was owned and driven by the defendant. From verdict and judgment for plaintiff for $16,500, defendant appeals.

This is not an ordinary negligence action. Although both plaintiff and defendant lived in Creek County, where the action was tried, the accident happened in New Mexico, and it is agreed that the substantive statutory law of New Mexico is determinative of the rights of the parties. New Mexico law requires a showing of consider-ably more than ordinary negligence in guest passenger cases.

Defendant's principal argument on appeal is that the evidence was insufficient, and the court erred in not sustaining his motion for directed verdict. We therefore summarize the evidence before discussing the requirements of the New Mexico statute.

On the question of liability, plaintiff's principal witness was the defendant, and the evidence is substantially uncontradicted. After defendant had worked all day, he and his grandmother left Bristow at 5:30 P.M. on a trip to Phoenix, Arizona, where defendant was to attend a national Jaycee convention and his grandmother planned to visit relatives. The accident happened about 6:30 the next morning when defendant fell asleep at the wheel. During the intervening time they had traveled continuously except for brief stops for refreshments or gasoline at Oklahoma City, Elk City and Albuquerque. Shortly after leaving Albuquerque defendant felt drowsy and stopped for a moment to "walk around and wake up" because "the road had seemed to hypnotize me". A little later defendant stopped again to help a stalled motorist who was headed for the same convention in Phoenix. The accident happened about an hour after that when defendant went to sleep and his automobile crashed into a concrete abutment at the "McCarty Underpass" near Grants, New Mexico.

During the last hour and a half before the accident, defendant "dozed off and woke up" three times, the last such occurrence being after the last stop to help the stalled motorist. After the plaintiff grandmother began to notice that defendant was "nodding a little bit", she admonished him several times and would "slap him and yell at him and tell him to be careful". She tried to get him to stop and get some sleep; he refused to do so because he wanted to beat the other Bristow Jaycees to Phoenix. Defendant testified that he knew it would be unsafe for him to continue driving under these conditions.

The New Mexico "Guest Statute" denies to a non-paying guest passenger the right to recover damages from the host-owner or operator of an automobile involved in an accident " * * * unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others". New Mexico Laws of 1935, ch. 15, sec. 1; New Mexico Statutes Annotated, Sec. 64–24–1. The New Mexico statute is identical with the original "guest passenger" statute adopted in Connecticut in 1927, and since repealed.

The New Mexico enactment was construed by the Supreme Court of Oklahoma before the New Mexico Supreme Court had occasion to do so. Gill v. Hayes (1941), 188 Okl. 434, 108 P.2d 117. In so doing, this court followed constructions of the identical statute of Connecticut, under the general rule that when one state adopts a statute from another, it is presumed to have adopted the construction placed upon that statute by the highest court of the other state.

The New Mexico court followed the same rule when it first gave detailed consideration to the statute in Smith v. Meadows, 56 N.M. 242, 242 P.2d 1006. It quoted decisions of the Connecticut Supreme Court of Errors to the general effect that the type of conduct required to justify a recovery under the guest statute is " * * wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another" and that "Wanton misconduct is more than negligence, more than gross negligence". It also noted with approval the prior construction of the statute by this court in Gill v. Hayes, supra.

The New Mexico court has used language similar to that quoted above in most of the cases construing the guest statute that have arisen since it was adopted. A summary of many of these cases may be found in Garrett v. Howden, 73 N.M. 307, 387 P.2d 874. A review of the facts in those cases would serve no useful purpose here because, as the court said in *Garrett,* "The difficulty in this type of a case is that prior authorities merely set out general guidelines, it being impractical, if not impossible, to state a rule which will apply to the facts in any particular case".

However, the only New Mexico "sleep" case that has come to our attention, De Blassie v. McCrory, 60 N.M. 490, 292 P.2d 786, is helpful by way of analogy. In that case, a judgment for defendant in an action arising under the guest statute was affirmed. In distinguishing that case from a Connecticut case in which a verdict for plaintiff had been affirmed, Potz v. Williams, 113 Conn. 278, 155 A. 211, the New Mexico court noted that in *Potz,* there had been evidence that the defendant "dozed off once" and added that "It is significant that, prior to the accident, he [the defendant in *De Blassie*] had not as in Potz v. Williams, supra, *actually fallen asleep,* once".

Potz v. Williams, supra, among other cases, was also mentioned by the New Mexico court in Smith v. Meadows, supra. In that case, in distinguishing various Connecticut cases in which judgments for plaintiffs had been sustained, the following language from another Connecticut case was quoted:

" * * * There is no evidence and no permissible inference that this driver knowingly assumed a risk or was aware of danger, Potz v. Williams, 113 Conn. 278, 281, 155 A. 211, or that he was warned or requested to do anything different from what he did, * * * or that he was guilty of more than thoughtlessness, inadvertence, or an error of judgment, * * * or anything to justify an inference that he was indifferent to the consequences which might result to his passengers from his conduct * * *."

Of course in the case now before us, there was uncontradicted evidence that the defendant "dozed off" not once but three times before the accident; that he was

aware of danger (he knew it was unsafe for him to drive); he was "warned" (his grandmother admonished him rather emphatically several times); and that he was indifferent to the consequences that might result (although aware of the danger, he ignored his grandmother's request that he stop and get some sleep).

In view of this evidence, we are unable to conclude that the trial court erred in overruling defendant's demurrer and motion for directed verdict, even under the requirements of the New Mexico statute.

In his second proposition, defendant argues that the trial court erred in overruling his motion for mistrial made after the "injection of insurance into the record" by plaintiff's medical witness, Dr. Mc.

The incident concerned came while Dr. Mc. was testifying about a condition called "Parkinsonism" with which plaintiff is afflicted. On direct examination he had testified that Parkinsonism could result from trauma and that in his opinion plaintiff's Parkinsonism had resulted from her injuries in the New Mexico automobile accident. On cross examination the following exchange occurred:

"Q. It is rather rare, isn't it, doctor?

"A. Yes, it is. I was checking on some textbooks the other day, and found some doctor who was head of one of the insurance companies and had written a very excellent article on it."

Defendant made no objection at that time. Later, on re-direct examination, plaintiff's counsel returned to the same subject, as follows:

"Q. Yes, sir, but you know from your readings that this does happen?

"A. Yes. There is a very excellent article, I was speaking about this, the doctor of the insurance company that makes statements like that he was the head of some insurance company, had stated that these Parkinsonisms can be caused by trauma."

At that time defendant objected and made his motion for mistrial without assigning a reason; the motion was overruled with a remark by the trial judge that "This doesn't have anything to do with this case". Shortly thereafter the court adjourned for the day, and the next morning, out of the presence of the jury, defendant dictated into the record the details of his objection and motion. At that time the court said "The court doesn't feel that the statement made by the doctor had any reference to insurance in this case and it was just merely an explanation of an excerpt that was given by a doctor * * *".

We agree with defendant that the doctor's remarks about insurance were unnecessary. However, we also agree with the trial judge that no prejudice resulted to defendant. The doctor's remarks cannot be said to amount to a statement, either direct or indirect, that the defendant in this case had insurance coverage.

The cases cited by defendant are not helpful to him. In Redman v. McDaniel, Okl., 333 P.2d 500, plaintiff's counsel was permitted to ask prospective jurors if they were "interested in the insurance business" without the use of preliminary questions which might have eliminated the necessity for direct reference to insurance, as suggested in Safeway Cab Service Co. v. Minor, 180 Okl. 448, 70 P.2d 76. This court held in effect that repeated and direct questions to 4 jurors about insurance " * * * unnecessarily and effectively suggests that the loss would fall upon an insurance company". In Missouri, Kansas and Oklahoma Transit Lines v. Baker, Okl., 393 P.2d 868, the trial court improperly overruled a motion to dismiss as to an insurance company co-defendant and submitted the case to the jury as to both insured and insuror, thus "forcefully" advising the jury that the defendant was protected by liability insurance. In Pratt v. Womack, Okl., 359 P.2d 223, plaintiff's husband testified that "I was very sure that they carried compensation". In Matchen v. McGahey, Okl., 455 P.2d 52, plaintiff's counsel said in closing

argument "And another thing, don't worry about our collecting a judgment or verdict against Mrs. Matchen. That's just something you don't have to worry about". This court held that the quoted statement "effectively suggested the existence of liability insurance" and required the granting of a motion for mistrial.

In the case now before us, the doctor's statements about insurance, while unnecessary, did not "effectively" suggest that defendant had insurance coverage. They were used merely to identify the author of the article to which the doctor was referring. We hold that defendant was not prejudiced by the remarks about insurance.

In a third proposition, defendant argues that the court committed reversible error in excluding evidence as to whether the plaintiff had her seat belt fastened at the time of the accident. The record affirmatively shows that the evidence was properly excluded because it was not within the issues raised by the pleadings. Defendant's answer pleaded that plaintiff was guilty of contributory negligence in that she agreed to accompany defendant from Bristow to Phoenix knowing that he intended to "drive straight through" and therefore "accepted any risk" involved. There was no general plea of contributory negligence in failing to exercise ordinary care, and no specific plea of contributory negligence in failing to fasten the seat belt. We are aware of the opinion of some legal scholars that the seat belt question is pertinent on the issue of mitigation of damages. 15 A.L.R.3d 1431 (footnote). That issue was not presented by the pleadings and neither party requested a jury instruction on mitigation of damages.

In his last proposition, defendant argues that he was prejudiced by certain remarks made by the trial judge in the presence of the jury. The court and counsel had been discussing in chambers the question of whether the plaintiff had or had not made a sufficient waiver to enable defendant to procure certain x-rays made by a doctor in New Mexico. The court said:

"Well, if you are going to make the same argument that we argued about over there and that's just what you're going to do, so it's overruled and the showing was made that you had an opportunity to obtain them."

Defense counsel then said "Show that we make objection to the Court commenting upon the evidence and we move for a mistrial".

The court was not commenting upon the evidence. His statement concerning the argument "over there" was a clear reference to a discussion at the beginning of trial and out of the hearing of the jury in which counsel stated their respective positions on the sufficiency of the waiver, and no evidence on that point was before the jury. The obvious purpose of the trial court was to restrict the remarks of counsel to matters properly before the jury. We hold that defendant was not prejudiced.

The judgment of the trial court is affirmed.

All the Justices concur.