AMERICAN NATIONAL BANK & TRUST
COMPANY OF SAPULPA, Guardian of
William Brooks Balthis, Debra Leanne
Balthis and David Douglas Balthis, mi-
nor children, Appellee,

v.

BIC CORPORATION, Appellant,

and

Hubert Brooks and Dorothy
Brooks, Defendants.

Nos. 80701, 81077.

Court of Appeals of Oklahoma,
Division No. 3.

May 3, 1994.

Certiorari Denied July 13, 1994.

Clyde A. Muchmore, Kelley C. Callahan, Oklahoma City, Joseph M. Best, Joseph A. Sharp, Tulsa, for appellant.

E. Terrill Corley, Thomas F. Ganem, Tulsa, for appellee.

## OPINION

BAILEY, Judge:

BIC Corporation (BIC) seeks review of the Trial Court's order denying BIC's motion to

vacate/petition for new trial after judgment on jury verdict for American National Bank and Trust Company of Sapulpa (Guardian), Guardian of William Brooks Balthis, Debra Leanne Balthis and David Douglas Balthis, minor children (Children), in Guardian's negligence/products' liability action. Herein, BIC asserts denial of fair trial and error in admission/rejection of evidence, submission of claims to the jury, denial of petition for new trial for jury misconduct, denial of motion for mistrial on mention of "insurance," and the award of punitive damages.

Children lived with their parents and grandparents, Defendants Brooks (Brooks), in the Brooks' home. Children received serious burn injuries in a fire started by Children while playing with a cigarette lighter manufactured by BIC.[1] Guardian then brought the instant action against BIC and Brooks to recover for Children's injuries under negligence and products liability theories.

Upon presentation of the evidence and instruction of the jury on Children's claims,[2,3] and BIC's/Brooks' defenses,[4] the jury returned a verdict for Children against BIC on Children's product's liability claim, awarding actual and punitive damages in excess of $24 million.[5,6] BIC then commenced appeal No. 80,701.

BIC subsequently moved to vacate, alleging jury misconduct.[7] BIC also petitioned for new trial claiming Guardian's prejudicial failure to reveal a pretrial agreement with the Brooks' homeowners' insurance company. However, BIC filed both its motion to vacate and petition for new trial out of time, and the Trial Court consequently denied BIC its requested post-judgment relief. BIC appealed the Trial Court's orders denying the requested post-trial relief in Case No. 81,077, and the matters have been consolidated for disposition under surviving Case No. 80,701.

I.

In its first proposition, BIC asserts Guardian and the Brooks entered a secret, *Mary Carter* agreement, denying BIC a fair trial. A *Mary Carter*-type agreement is generally a secret agreement between adverse parties by which the contracting defendant remains in the lawsuit, guarantees plaintiff a certain monetary recovery, and the contracting defendant's liability is decreased in direct proportion to the increase in the

1. The lighter apparently failed to extinguish.

2. As against BIC, the Trial Court instructed on the issues of causation, i.e., whether Children's injuries resulted from an explosion caused by a defective BIC lighter, and alleged defect in the design, manufacture and sale of the BIC lighter, i.e., the lighter's failure to extinguish and lack of incorporation of child resistant features, as well as BIC's alleged failure to adequately warn. The Trial Court also instructed on the issue of punitive damages, i.e., whether BIC's conduct in the design, manufacture and sale of the lighter was willful, wanton and in reckless disregard for the safety of the consuming public.

3. As against the Brooks, the Trial Court instructed on the Brooks' alleged negligence, i.e., whether the Brooks were negligent in allowing the children access to lighters.

4. That is, the Trial Court instructed the jury that BIC and the Brooks denied the allegations, and asserted in defense that Children's injuries resulted from misuse of the product by an unintended user; the open and obvious potential for danger of a lighter in the hands of children; Brooks' negligence as a superseding, intervening cause of

the injuries; the sole proximate cause of the injuries attributable to the failure of parental supervision of the children; and lack of foreseeability that the adults of the household would allow the children access to lighters. The Brooks denied their negligence and claimed the injures were caused by a defective lighter.

5. The jury awarded damages in the following particulars: For Child William, $3,695,482.30 in actual damages and $3,695,482.30 in punitive damages; for Child Debra, $3,701,471.50 in actual damages and $3,701,471.50 in punitive damages; and for Child David, $3,623,226.13 in actual damages and $3,623,226.13 in punitive damages. After addition of interest, the Trial Court entered judgment on the jury verdicts for total judgments against BIC in favor of William in the amount of $8,194,072.87, in favor of Debra in the amount of $8,207,352.84 and in favor of David in the amount of $8,033,857.70, plus costs of $6,990.44 and post-judgment interest.

6. No verdict was returned against the Brooks.

7. That is, based on BIC's belief that jurors used improper extra-evidentiary information about lighters.

non-agreeing defendants' liability.[8] Our Supreme Court has held such agreements unenforceable as against public policy where the "agreeing defendant remains in the lawsuit." [9]

■ However, we find no vitiating *Mary Carter*-type pretrial agreement between Guardian and Brooks' insurer in the present case. The Brooks' lawyer testified at hearing on BIC's post-trial motions that he had misread the Brooks' homeowners' insurance policy and believed that the coverage did not include personal injury to the resident grandchildren. He wrote Shelter insurance company that he did not believe they were required to defend the lawsuit on behalf of the Brooks. Later, Appellee's lawyer wrote Shelter asking Shelter to forego a declaratory judgment action because even if Guardian received a verdict, it promised not to garnish Shelter. There was no evidence presented showing either the Brooks' lawyer or Guardian's counsel believed the insurance policy covered the personal injuries of the children. There was no evidence presented showing an agreement between the parties to the lawsuit. The Brooks' defense had always been to place fault at the feet of BIC, just as BIC tried to claim the Brooks' negligence was the cause of the children's' injuries, and the Brooks remained vulnerable to personal liability throughout the lawsuit.[10] Because there was no agreement between the parties, much less one where the defendant directly benefitted from an award, we therefore find no *Mary Carter*-type of agreement improperly affecting the fairness of the adversary system, and reject this proposition.

## II.

BIC next asserts error of the Trial Court in refusing to allow BIC's expert witness to express his opinion on the question of whether, to a reasonable degree of engineering certainty, the mini-BIC lighter at the time of Children's injuries constituted a reasonably safe product.[11] By offer of proof, BIC asserted the expert would have testified to the reasonable safety of the lighter.

■ Certainly, an expert may express his/her opinion on an ultimate fact.[12] In the present case, however, we find no abuse of discretion by the Trial Court in refusing to allow the expert to so testify in the present case. That is, BIC's expert testified in detail about all the facts that lead him to the conclusion he was not allowed to express,[13] and any further opinion on the reasonable safety of the lighter would have therefore been cumulative to other of the expert's testimony. We therefore reject this proposition.

## III.

■ In its third proposition, BIC asserts Guardian's child resistancy and warning claims should not have been submitted to the jury. However, we find BIC failed to preserve this issue for review. That is, BIC objected to the pertinent instructions only on the ground that Guardian had failed to prove the allegation.[14] Finding the instructions otherwise free of fundamental error,[15] we consequently reject this proposition.

**8.** *Cox v. Kelsey–Hays Co.,* 594 P.2d 354, 360 (Okl.1978).

**9.** *Cox,* 594 P.2d at 360 ("any agreement wherein one defendant will directly benefit from a joint award to be void and unenforceable as against public policy if agreeing defendant remains in the lawsuit").

**10.** Even if the insurance company had defended on the Brooks' behalf, this information would have been kept from the jury. *Redman v. McDaniel,* 333 P.2d 500, 503 (Okl.1958).

**11.** Before the expert could respond to the question, Guardian objected, asserting such an opinion was purely "self-serving," which the Trial Court sustained. The court then said, within the hearing of the jury, that it had a "problem with this particular witness, although he's qualified, he has been qualified, but he's a company representative. I think it would invade the province of the jury, and I'm going to sustain for that reason."

**12.** 12 O.S.1991 § 2704.

**13.** *See, e.g., Clingan v. State,* 15 Okl.Cr. 483, 178 P. 486, 489 (Okl.1919).

**14.** *Security National Bank of Sapulpa v. Hufford,* 754 P.2d 561 (Okl.App.1987).

**15.** *Sellars v. McCullough,* 784 P.2d 1060 (Okl. 1989); *Walker v. St. Louis–San Francisco Ry. Co.,* 646 P.2d 593 (Okl.1982); *Del City v. Moore,* 483 P.2d 324 (Okl.1971).

## IV.

■ For its fourth proposition, BIC claims that two jurors failed to reveal on voir dire that they had experienced lighter problems and that they injected this and other extra-judicial information into the deliberations. On this issue, one of the jurors testified at the motion to vacate that another juror had mentioned a lighter that would not extinguish and that this juror had cleaned her house to get rid of errant lighters, but that this juror made little of this incident and did not say that the lighter she had trouble with was a BIC. Another juror recalled having a lighter flare up and singe his mustache. Having reviewed the record relevant to this proposition, we find the complained-of instances, unconnected to BIC and not involving injury to person or property, do not constitute juror misconduct warranting new trial.[16]

## V.

■ For its fifth claimed error, BIC challenges certain evidentiary rulings of the

Trial Court, allegedly to BIC's prejudice. In particular, BIC asserts the Trial Court erroneously allowed Guardian to repeatedly refer to "hundreds and thousands" of other lighter-incident claims without proper foundation. BIC also asserts that Guardian repeatedly and unfairly exaggerated the scope and size of the supposed "fireball." However, the Trial Court allowed BIC to cross-examine the witnesses, and afforded BIC more than adequate opportunity to explore the foundation for the witnesses' opinions and to thereafter impeach the credibility of the witnesses by showing lack of substantial similarity in foundational basis. In the present case, however, BIC chose not to so cross-examine the witnesses, and we consequently find no abuse of discretion by the Trial Court in the admission of the challenged evidence.[17]

## VI.

BIC next asserts Brooks' counsel improperly and prejudicially injected the issue of "insurance" warranting mistrial.[18] In partic-

---

16. Cf., *Willoughby v. City of Oklahoma City*, 706 P.2d 883 (Okl.1985) (where juror, allegedly with the court's permission, sought and obtained opinions from experts, by independent investigation, concerning the central issue relating to the decomposition of organic materials and the cause of death, and relayed her experts' opinions to the other jurors, held, juror misconduct requiring new trial); *Stillwell v. Johnson*, 272 P.2d 365 (Okl.1954) (where juror gave false or deceptive answers to questions on voir dire relating to involvement in other litigation concerning similar issues, held, juror misconduct requiring new trial).

17. The relevance and admission of evidence are matters addressed to the sound discretion of the Court, whose rulings thereon will not be disturbed absent a showing of abuse of discretion. 12 O.S.1991 §§ 2402, 2403; *Whiteley v. OKC Corp.*, 719 F.2d 1051 (10th Cir.1981); *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983); *Samara v. State*, 398 P.2d 89 (Okl.1964), *cert. den. and appeal dismissed*, 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681. Quoting from the Court's syllabus: "A judgment will not be reversed for error in the rejection of evidence unless it appears from an examination of the entire record that such error had probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." *Samara*, 398 P.2d at 90.

18. *See, e.g., Tidmore v. Fullman*, 646 P.2d 1278 (Okl.1982) ("[W]here fact of liability insurance

coverage is brought before the jury unnecessarily or forcefully where liability insurance coverage is not legislatively mandated and where the insurer has no direct liability to the claimant, such jury revelations are, as a matter of law, prejudicial, and if the insured is or might have been harmed thereby, reversible error"); *Lilly v. Scott*, 598 P.2d 279 (Okl.App.1979) (where issue of insurance arises at defendant's behest during cross-examination of plaintiff, and defendant, without contemporaneous objection, further pursues the issue without reference to what kind of insurance or who insured was, mention of insurance does not constitute reversible error); *Baker.v. Knott*, 494 P.2d 302 (Okl.1972) (mention of "insurance" not cause for mistrial unless defendant prejudiced thereby; held, doctor's reference to insurance, while unnecessary, did not effectively suggest existence of defendant's insurance coverage as to warrant mistrial); *Matchen v. McGahey*, 455 P.2d 52 (Okl.1969) (statements by plaintiff in closing argument that a judgment could be collected from other than defendant effectively suggested existence of liability insurance warranting grant of mistrial); *Hutton v. Lowry*, 444 P.2d 812 (Okl.1968) (whether interjection of the issue of insurance warrants mistrial depends on facts and circumstances of each particular case; held, doctor's reference to insurance, invited by defendant on cross-examination not cause for mistrial); *Okla. Trans. Co. v. Claiborn*, 434 P.2d 299 (Okl. 1967) (fundamental question is whether mention of insurance denied defendant a fair trial; where insurer not party to case, it is error to mention

ular, BIC complains that Brooks' attorney, when questioning an employee for Steamatic, hired by the insurance company to clean up the Brooks' fire-damaged property, approached BIC's table, leading the jurors to believe the insurance company in question was BIC's.

■ However, we find no error as alleged. BIC clearly had no problem with talking about Shelter being the insurance company for the Brooks on at least the property damage claim.[19] Under these circumstances, we find no improper interjection of the issue of "insurance," nor prejudice to BIC arising therefrom. We accordingly reject this proposition.[20]

## VII.

Finally, BIC challenges the jury verdict for punitive damages, first arguing unconstitutionality of the Oklahoma punitive damage statute, 23 O.S.1991 § 9. However, we have previously held the Oklahoma punitive damage statute constitutional,[21] and a more recent United States Supreme Court decision has not altered our opinion.[22] We consequently here find no constitutional infirmity.

BIC also asserts error of the Trial Court in instructing on punitive damages when the Court (a) had found insufficient evidence to instruct the jury on BIC's negligence and (b) refused to lift the statutory "cap" on punitive damages,[23] thus indicative of a finding of insufficient evidence of conduct meriting the punitive damage award. BIC further argues the "excessive" punitive damage awards in the present case clearly evince the jury's improper sympathetic response for the children.

■ An award of punitive damages is controlled by statute which provides:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice,

insurance, but such error is harmless unless defendant is prejudiced thereby, and determination of prejudice turns on facts and circumstances of each case); *Million v. Rahhal,* 417 P.2d 298 (Okl.1966) (unresponsive "no insurance" answer of plaintiff on cross-examination improperly and prejudicially injected issue of insurance, and error not cured by admonition or remittitur); *J.C. Penney Co. v. Barrientez,* 411 P.2d 841 (Okl.1965) ("Generally, any suggestion by plaintiff, plaintiff's counsel or any of the plaintiff's witnesses that the defendant is covered by liability insurance, whether accomplished inadvertently or intentionally, is improper and prejudicial to defendant"); *Missouri, Kansas and Oklahoma Transit Lines v. Baker,* 393 P.2d 868 (Okl.1964) (controlling issue is whether defendants suffered prejudice by revelation to jury of ordinance-mandated liability insurance; held, because ordinance precluded insurer's direct liability, defendant prejudiced warranting mistrial); *Pratt v. Womack,* 359 P.2d 223 (Okl.1961) (suggestion by one of plaintiff's witnesses of insurance coverage held prejudicial, not cured by admonition, warranting remittitur); *Redman v. McDaniel,* 333 P.2d 500 (Okl.1959) (repeated inquiry during voir dire concerning prospective jurors' interest in the in-

surance business unnecessarily informed jury of insurance coverage, warranting new trial).

19. *Lilly v. Scott,* 598 P.2d at 283–284; *Baker v. Knott,* 494 P.2d at 305–306; *Hutton v. Lowry,* 444 P.2d at 814–816.

20. *See also, Eversole v. Oklahoma Hospital Founders Assoc.,* 818 P.2d 456, 462 (Okl.1991) (Motion for mistrial addressed to sound discretion of trial court, whose ruling thereon will not be disturbed absent a clear showing of abuse of discretion).

21. *Scribner v. Hillcrest Medical Ctr.,* 866 P.2d 437 (Okl.App.1992).

22. *TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

23. That is, the statutory proscription in 23 O.S. § 9 of an award of punitive damages in excess of actual damages awarded in the absence of an express finding of circumstances justifying an award in excess of actual damages.

actual or presumed, then the jury may give damages for the sake of example, and by way of punishing defendant, and the percentage limitation on such damages set forth in this section shall not apply.

　B.　The provisions of this section shall be strictly construed.

23 O.S.1991 § 9.

The Oklahoma punitive damage statute thus permits recovery of punitive damages in cases where sufficiently egregious conduct is shown, but limits such recovery to not more than actual damages, *unless by clear and convincing evidence,* such egregious conduct is undoubtedly proven, in which case, punitive damages may exceed the amount of actual damages awarded. By this dichotomy, we presume the Oklahoma legislature intended that punitive damages be recoverable in all cases where fraud, malice or like conduct is shown *by the preponderance of the evidence,* but sought to limit such recovery *unless* the conduct warranting punitive damages is shown *by clear and convincing evidence* and the Trial Court so finds. The difference in standards of proof is thus relevant only to the question of whether to lift the cap, not whether there is evidence of oppressive, malicious, fraudulent acts or acts performed with wanton disregard for the rights of others, and we refuse to adopt the construction urged by BIC.

　　So analyzed, we find evidence in the record, if believed by the jury, supporting an inference of reckless disregard, i.e., "aware[ness] of, or culpabl[e] indifferen[ce] to, unnecessary risk of injury" to the general public from a defectively designed and manufactured BIC lighter, warranting submission of the issue of punitive damages to the jury on Guardian's products' liability claim.[24] Under our previous analysis herein, we therefore hold the Trial Court's refusal to instruct

on BIC's negligence and/or to lift the punitive damage cap cannot be taken as an indication of insufficient evidence for submission of the issue of punitive damages altogether.

　　Having so held and considering the "ample" awards of actual damages, we find when the ... punitive damages awards are added to the other amounts recovered, the total verdict becomes so grossly excessive that we cannot in reason allow it to stand.[25] Accordingly we hold remittitur appropriate, and affirm the Trial Court's orders/judgments on jury verdict conditioned on remittitur of all but $1,000,000 of the punitive damages awarded to each Child, that is: leaving an award of $1,000,000 in punitive damages as to Child William, and a remittitur of $2,695,482.30; leaving $1,000,000 in punitive damages as to Child Debra, and a remittitur of $2,701,471.50; and leaving $1,000,000 in punitive damages as to Child David, and a remittitur of $2,623,226.13, failure in which to result in new trial.

The orders of the Trial Court denying BIC's motion to vacate/petition for new trial and judgment on jury verdict for Guardian is therefore AFFIRMED ON CONDITION OF REMITTITUR.

GARRETT, V.C.J., dissents in parts I through VI and concurs in part VII.

HUNTER, P.J., concurs in parts I through VI and dissents in part VII with separate opinion.

HUNTER, Presiding Judge, concurring in part and dissenting in part:

I fully concur with the majority's opinion in parts I–VI. I concur with the reasoning found in part VII, but I dissent from the majority's order of remittitur of punitive damages because it is, in my opinion, based, not on the majority's holding; not on the law;

---

24.　*Thiry v. Armstrong World Industries,* 661 P.2d 515, 518 (Okl.1983).

25.　*Chandler v. Denton,* 741 P.2d 855, 868 (Okl. 1987). *See also, Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1116 (Okl.1991) ("[T]he large award of punitive damages was likely a result of 'an improper sympathetic response ... larger than reason dictates to be necessary to deter such conduct in this defendant and others

similarly situated'"); *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 915 (Okl.1982) (punitive damages held "partially the result of the combined impact of the several wrongful and willful acts of the defendants and combined effect of these items of evidence influenc[ing] the jury ... [and] creat[ing] an improper sympathetic response of a damages award larger than reason dictates to be necessary to deter such conduct.")

not on any issue raised by Appellant and not on the evidence.

*In Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991), the United States Supreme Court found that Alabama imposed a sufficiently definite and meaningful constraint on the fact-finders award of punitive damages because its Supreme Court considered the following factors when determining whether the punitive damage award was reasonably related to the goals of deterrence and retribution. In particular, the Alabama Supreme Court determined whether the award was excessive or inadequate by considering: (1) whether there was a reasonable relationship between the award and the harm likely to occur, and having occurred, from defendant's conduct; (2) degree of reprehensibility of defendant's conduct, the duration of the conduct, defendant's awareness, any concealment and the existence and frequency of similar past conduct; (3) profitability to defendant of the bad conduct, the desirability of removing that profit and of having defendant sustain a loss; (4) financial position of defendant; (5) costs of litigation; (6) criminal sanctions so as to mitigate the award; and (7) the existence of other civil awards taken against defendant, also by way of mitigation. It is clear from my colleague's opinion that they did not consider any comparable factors. In upholding the constitutionality of Alabama's punitive award scheme, the U.S. Supreme Court in *Haslip* at 23, 111 S.Ct. at 1046, stated "We are aware that the punitive damages award in this case is more than 4 times the amount of compensatory damages, is more than 200 times the out-of-pocket expenses of respondent Haslip ... and, of course, is much in excess of the fine that could be imposed for insurance fraud" under Alabama law. The award, however, did not lack "objective criteria." In *TXO Production Corp. v. Alliance Resources Corp.,* — U.S. —, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the U.S. Supreme Court upheld a judgment against TXO for $19,000.00 in actual damages and $10 million in punitive damages. TXO argued that the punitive damage award was so excessive so as to amount to an "arbitrary deprivation of property without due process of law." *TXO* at —, 113 S.Ct. at 2718.

The *TXO* court held, at —, 113 S.Ct. at 2721, that the *Haslip* factor of punitive damages bearing a reasonable relationship to the compensatory damage award, was only one of seven listed factors. In the *TXO* case, a weighty factor to consider was the potential harm that might result from defendant's conduct.

The majority has, in my opinion, invaded the province of the jury and substituted instead its subjective "conscience" of what amount of damages constitutes sufficient amount to punish or make an example of BIC. When the law plainly states how and when to limit the amount of punitive damages, and the jury is well-instructed, this court errs when it "caps" the award based on its own conscience. The award does not, in any way shock my conscience, nor do I find it excessive. Obviously the trial judge and the twelve persons on the jury were not shocked by the amount of punitive damages and they heard the evidence. The United States Supreme Court, in *TXO,* at —, 113 S.Ct. at 2720, speaking to the deference the reviewing court should show the jury's determination of punitive damages, stated:

> The members of the jury were determined to be impartial before they were allowed to sit, their assessment of damages was the product of collective deliberation based on evidence and the arguments of adversaries, their award was reviewed and upheld by the trial judge who also heard the testimony, and it was affirmed by a unanimous decision of the State Supreme Court of Appeals. **Assuming that fair procedures were followed, a judgment that is a product of that process is entitled to a strong presumption of validity. Indeed, there are persuasive reasons for suggesting that the presumption should be irrebuttable.** (citations omitted) (emphases mine).

The majority misplaces its reliance on *Chandler v. Denton,* 741 P.2d 855 (Okl.1987). Reminiscent of the language used by the majority, the *Chandler* court stated, at 868:

> The $600,000.00 recovery allowed by the jury under this legal rubric (subjective evidence for proving elements of intentional

infliction of emotional distress and invasion of privacy), although neither unconscionable nor excessive, is indeed ample and generous. When the $500,000 punitive damages award is added to the other amounts recovered, the total verdict becomes so grossly excessive that we cannot in reason allow it to stand. In light of the generously and amply compensated loss for Chandler's actual harm, we find the exemplary damages allowed by the jury not to be responsive to the purpose of civil punishment.

The statute in question, 23 O.S.1981 § 9, in effect at the time the *Chandler* case was written, however, was significantly different from that in effect in the instant case.[1] Effective November, 1986, the legislature amended the punitive award statute to cap the award at the amount of compensatory damages, unless the court found that the evidence clearly and convincingly showed oppressive, fraudulent or malicious behavior on the part of the defendant. The appellate court's intervention on the grounds found in *Chandler* and in *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 915 (Okl.1982) is not officious considering the legislation provided limitless punitive damages. Such is no longer the case.

In *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105 (Okl.1991), the only case relied upon by the majority in which the amended 23 O.S.Supp.1986 § 9 is the law to apply, the Oklahoma Supreme Court ordered remittitur of the punitive damages, but for a specific reason. In *Buzzard*, the jury awarded Buzzard actual damages in the amount of $750,000.00, reduced by $540,000.00 because of Buzzard's own negligence. The amount of actual damages was limited to $10,000.00 by the insurance policy. The jury then awarded Buzzard $200,000.00 in actual damages for bad-faith breach of contract and $2,000,000.00 in punitive damages. In ordering reduction in the amount of punitive damages, the *Buzzard* court stated, at 1116:

"With bad faith having been found by the jury, the jury then proceeded to award the Buzzards actual damages for their emotional distress, as allowed by *Christian* [*v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977) ], in the sum of $200,000.00. That is not an insignificant sum for the distress occasioned by delay in withholding a $10,000.00 insurance payment over seven and a half months. No appeal is brought as to the quantum of these actual damages. However, we believe that the large award of punitive damages was likely a result of an improper sympathetic response … larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated." (citing *Timmons* ).

In a Court of Appeals case, in which I concurred, we ordered the punitive damages award reduced. In *Scribner v. Hillcrest Medical Center*, 866 P.2d 437 (Okl.App.1992), the jury awarded plaintiff $100,000.00 in actual damages and $10,000,000.00 in punitive damages. The trial court had made its statutory finding that allowed it to lift the cap. The jury was therefore instructed on punitive damages with no restrictions, or cap, on the amount awardable. In such a case, the reasoning in cases applying the pre–1986 § 9 judicial guidelines for determining reasonable award is applicable.

There is no reason in fact or law for modification of the awards of punitive damages in this appeal. The law is there to protect all of us from individual notions of propriety. This court's invasion of the fact-finders' domain is equivalent to private law, reflecting a system of men rather than law. I dissent from the order of remittitur and would affirm the trial court's judgment in its entirety.

---

1. 23 O.S.1981 § 9—In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant.